

ENTERED
04/19/2016

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

IN RE:                              §
TREYSON DEVELOPMENT, INC.           §        CASE NO: 14-70256
    Debtor                          §
                                    §        CHAPTER  11
                                    §
                                    §
HINOJOSA ENGINEERING, INC.          §
    Plaintiff                       §
                                    §
VS.                                 §        ADVERSARY NO. 15-7014
                                    §
HECTOR RUBEN LOPEZ, *et al*         §
    Defendants                      §

**MEMORANDUM OPINION**
**GRANTING PLAINTIFF'S MOTION TO REMAND, ABSTENTION AND 9027(e)(3)**
**STATEMENT**
**AND**
**DENYING PLAINTIFF CREDITOR'S MOTION FOR RELIEF FROM ORDER**

*[Resolving Case No. 14-70256, ECF No. 158* and *Case No. 15-7014, ECF No. 3]*

## I.    Introduction

This Court reviews whether the Order Confirming the Plan of Reorganization (the

"***Order***"), [Case No. 14-70256, ECF No. 142], filed by Treyson Development, Inc. ("***Treyson***"

*or "**Debtor**"*) is void, as alleged by Hinojosa Engineering, Inc. (the "***Plaintiff***"), since a provision

contained in Debtor's Chapter 11 Plan allegedly violated 11 U.S.C. § 524, which purportedly

provides a basis for relief from judgment under Fed. R. Bankr. P. 9024 (which incorporates Fed.

R. Civ. P. 60), and whether this Court should remand the case back to state court under Fed. R.

Bankr. P. 9027.  This Court determines that based on the Motion for Remand, Abstention and

9027(e)(3) Statement, [Case No.15-7014, ECF No. 3], the Motion For Relief From Order, [Case

No. 14-70256, ECF No. 158], the arguments presented in an evidentiary hearing on this matter

held January 12, 2016, all other evidence in the record, and relevant case law, that the Order is

not void and thus the provision contained in the Plan, which discharged and released Hector Ruben Lopez, Jr., [1] and Treyson of liability for Plaintiff's claim, is binding upon all noticed parties, which includes Plaintiff, and that this Court is required to abstain from hearing the matter, as a result the case shall be remanded to state court.

## II.    Procedural Background

On September 3, 2015, Hector Ruben Lopez and Blanca Lopez (collectively the "***Lopez Defendants***") filed a Notice of Removal of a case filed by Plaintiff in the 139th Judicial District of Hidalgo County, Texas, Case No. C-3020-15-C, against the Lopez Defendants and Slusher & Associates, PLLC ("***Slusher***").  [Case No. 15-7014, ECF No. 1]  The claims alleged by Plaintiff in the case are that the Lopez Defendants and Slusher committed common law fraud, fraud by non-disclosure, breach of fiduciary duty, negligence, and violations under the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE § 17.41 *et seq.*, ("***Claims***") related to a sale of real property by Debtor to Plaintiff in 2008.  Plaintiff filed a Motion To Remand, Abstention and 9027(e)(3) Statement ("***Motion to Remand***"),  [ECF No. 3], on September 17, 2015.  The following day, September 18, 2015, Plaintiff also filed a Motion for Relief from Order ("***Motion to Vacate***").  [Case No. 14-70256, ECF No. 158].  The Lopez Defendants filed a Response to Plaintiff's Motion to Remand on September 30, 2015.  [Case No. 15-7014, ECF No. 4].

This Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rules of Bankruptcy Procedure 7052, which incorporates Fed. R. Civ. P. 52.  To the extent that any Finding of Fact constitutes a Conclusion of Law, it is adopted as such.  To the

---

[1] Hector Ruben Lopez is used interchangeably with Hector Ruben Lopez, Jr. in the pleadings in the instant case.  *See generally* [Case No. 15-7014, ECF No. 1 at 2]; [ECF No. 1-1 at 1-2] (identifying Hector Ruben Lopez also as Hector Ruben Lopez Jr.).  The parties have not submitted any evidence to affirmatively establish the identity of Hector Ruben Lopez, from the state court action, as one and the same as Hector Ruben Lopez, Jr., President of Treyson.  Therefore, this Memorandum Opinion and accompanying Order do not reach the issue of the identity of Hector Ruben Lopez, defendant in the underlying state court action, as being the same as Hector Ruben Lopez, Jr., President of Treyson and a non-debtor named in the Plan.

extent that any Conclusion of Law constitutes a Finding of Fact, it is adopted as such.

### III.   Findings of Fact

On February 25, 2008, Treyson purchased real property located at 109 E. Verna Jean Dr., South Padre Island, Texas 78597 (the "***Property***").  [ECF No. 28 at ¶¶ 2-3].  On December 23, 2008, Treyson sold the Property to Plaintiff pursuant to a Deed of Trust and Warranty Deed with Vendor's Lien that provided for wraparound financing,[2] Doc. No. 2009-00000937, in Volume 15686, Page 164, in the Official Records of Cameron County.  *Id.* at ¶ 7; [ECF No. 157-1 at ¶ 10]; Pl. Ex. 3.   Plaintiff paid $200,000 of the $300,000 contract price at closing, and the remaining $100,000 took the form of a note to Treyson.  [ECF No. 157-2]; *see also* Treyson Ex. 3.  The Deed of Trust provided that Treyson, as Beneficiary, would be responsible for making payments on the underlying note,[3] which was not provided with the claim.  [Case No. 14-70256, Claim No. 23-1 at 14].   *But see* Treyson Ex. 3.   Slusher acted as the closing agent for the transaction.  [Case No. 14-70256, Claim No. 23-1 at 4].

On May 5, 2014, Treyson filed its initial petition under title 11, chapter 11 of the United States Code (the "***Bankruptcy Code***" or "***Code***"), which was signed by Hector Ruben Lopez, Jr. in his capacity as President.[4]  [Case No. 14-70256, ECF No. 1].   However, neither the initial petition nor the first amended petition filed on May 20, 2014, [ECF No. 10], contained any schedules, and the petition listed only four creditors.  On May 30, 2014, Debtor filed its second amended petition, Schedules A-H, and Statement of Financial Affairs.  [ECF No. 12].  The only

---

[2] Wraparound Mortgage:  "A second mortgage issued when a lender assumes the payments on the borrower's low-interest first mortgage (usu. issued through a different lender) and lends additional funds. • Such a mortgage covers both the outstanding balance of the first mortgage and the additional funds loaned."  Black's Law Dictionary (10th ed. 2014).
[3] *See* [Case No. 14-70256, ECF No. 28 at ¶ 4] (stating that the terms of the note required installment payments of $ 2,036.00, each month on the 25th, beginning March 2008 and ending February 2013, at which time a balloon payment equal to any unpaid principal and accrued interest would be due).
[4] Any reference to "**Code**" or "**Bankruptcy Code**" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.

mentions of a relationship with Plaintiff were the details of a Note Receivable in the amount of $63,783.77 from Plaintiff related to the Property in Schedule B and that the property title was transferred to Plaintiff on December 23, 2008 as set forth in Schedule D.  *Id.* at 8, 12.

On July 2, 2014, VFC Properties 30, LLC ("**VFC**"), a creditor in this case, filed a Motion for Relief from Stay Regarding Non-Exempt Real Property, which sought relief from the automatic stay on the Property sold by Treyson to Plaintiff.  [ECF No. 28].  In the motion, VFC stated that "[Plaintiff] held title to the property described below,"[5] and that Hector Ruben Lopez, Jr. executed a promissory note for such property with Texas State Bank on February 28, 2008 that included an assignment of rent, income, and receipts for the property.  *Id.* at ¶¶ 2-6.  VFC's Certificate of Service included Plaintiff in the Service List for those parties that received notice of the motion and any hearing(s) that were scheduled on the matter.  *Id.* at 5-6.  On July 15, 2014, Treyson filed a Response to VFC's Motion for Relief from Stay, which recited a general denial of allegations and asserted that Treyson could make adequate protection payments and had appropriate insurance.  [ECF No. 31].  Nevertheless, on August 7, 2014, this Court signed the Unopposed Order Regarding Automatic Stay of Non-Exempt Real Property filed by VFC, which terminated the automatic stay as to the Property.  [ECF No. 37].

On July 7, 2014, Treyson filed an Amended Schedule E, Amended Schedule F, and a list of Equity Security Holders.  [ECF No. 29].  The list of unsecured creditors in Schedule F did not include Plaintiff.  *Id.* at 3-8.  On August 12, 2014, Treyson filed its Third Amended Schedule F that included, for the first time, Plaintiff as an unsecured creditor holding a non-priority claim in an "unknown" amount.  Additionally, the claim was listed as contingent, unliquidated, and

---

[5] The Legal Description of the Property is "Lot Six-A (6-A), Block One Hundred Sixty-Two (162), Padre Beach, Section XI, being a replat of Lot Six (6), Block One Hundred Sixty-Two (162), Padre Beach Section XI, an Addition to Cameron County, Texas, according to the map or plat thereof recorded in Cabinet 1, Slot 2422-A, Map Records of Cameron County, Texas."  [ECF No. 28 ¶ 5].

disputed.  [ECF No. 39].  Treyson served Plaintiff with the Amended Schedule F via Certified Mail, Return Receipt Requested.  [ECF No. 41].

On September 30, 2014, Plaintiff, by and through its attorney Gerardo Linan, filed a Proof of Claim in the amount of $275,000 related to the transaction between Treyson and Plaintiff.  [Case No. 14-70256, Claim No. 23-1].  In support of the Proof of Claim, Plaintiff provided a copy of the Warranty Deed with Vendor's Lien, [Claim No. 23-1 at 2-6], and a Deed of Trust, [Claim No. 23-1 at 7-16], that were executed by Hector Lopez, Jr., as President of Treyson, and Plaintiff on December 23, 2008.

On October 17, 2014, Treyson filed its Plan of Reorganization (the "***Plan***").  [ECF No. 66].  The Plan provided for no payment to Plaintiff as a member of Class 10, which was set forth as an unsecured non-priority, disputed, unliquidated, and contingent claim.  *Id.* at 9.  Treyson also stated that Plaintiff failed to file a timely claim and, as such, was barred from collecting from Treyson under the Plan.  *Id.* at 13.  Treyson certified that Plaintiff received notice via Certified U.S. Mail, Return Receipt Requested.  [ECF No. 70].  Contemporaneously, Treyson filed its Disclosure Statement on October 17, 2014.  [ECF No. 67].  The Disclosure Statement included Section XIV, entitled "Releases and Alteration of Rights of and With Respect to Third Parties."  *Id.* at 24.  This section contained a clause regarding the effect of the Plan on Third Parties:

> Except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date, each Holder of a Class 9 Unsecured Claim and Class 10 Unsecured Claim who (i) has voted to accept this Plan or abstained from voting and (ii) has not opted out from the release provided herein shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtor and Debtor's sole shareholder, Hector Ruben Lopez, Jr. ("Lopez"), from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any derivative claims asserted against Lopez for conducting business on behalf of Debtor, whether such claims are known or unknown, foreseen or unforeseen,

existing or hereafter arising, in law, equity or otherwise, that such entity or claimant would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, Lopez, the Debtor's pre-petition and post-petition purchase, sale, or rescission of the purchase or sale of any asset of the Debtor, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any released party, the negotiation, formulation or preparation of the Plan and Disclosure Statement or related agreements, instruments or other documents, upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date.

*Id.* at 25-6.  Plaintiff was included in the service list prepared by the Bankruptcy Noticing Center to receive the notice mailed on October 19, 2014 by U.S. Mail to Plaintiff at 622 E. St. Charles, Brownsville, TX 78520-5218.  [ECF No. 69].  Additionally, Plaintiff was served with a copy of the Disclosure via Certified U.S. Mail, Return Receipt Requested.  [ECF No. 70].

On December 10, 2014, VFC filed its Objection to Debtor's Disclosure Statement, [ECF No. 76], which this Court entertained on December 17, 2014 at the hearing on the Disclosure Statement.  [ECF No. 80].  Additionally, this Court entered the Agreed Order Approving Disclosure Statement.  [ECF No. 81]  Prior to this hearing, a review of the docket does not indicate any filings by Plaintiff or notice of appearance by an attorney on its behalf.  The Disclosure Statement was approved by this Court and parties were given until January 14, 2015 to file rejections or acceptances of the Plan.  [ECF No. 81].  Treyson certified that Plaintiff received notice of the Disclosure Statement, Agreed Order Approving Disclosure Statement, the Plan, the Fixing of Time for Filing Objections, Acceptances or Rejections to the Plan, Order Setting Confirmation Hearing, [ECF No. 81], and a blank Ballot Accepting or Rejecting the Plan of Reorganization.  [ECF No. 83]; *see also* [ECF No. 84].

The Confirmation Hearing was held on July 22, 2015, after having been rescheduled several times from the original January 21, 2015 date.  [Case No. 14-70256, ECF No. 141].  Neither Plaintiff nor an attorney on its behalf appeared at the hearing.  *Id.*  This Court entered the

Order Confirming Treyson's Plan of Reorganization on July 22, 2015 (the "***Order***").  [ECF No. 142].  Plaintiff was included in the notice of the Order sent by the Bankruptcy Noticing Center on July 24, 2015.  [ECF No. 145].

On July 16, 2015, shortly before the Confirmation Hearing was held, Plaintiff filed its state court action in the 139th Judicial District Court of Hidalgo County, Texas.  [ECF No. 154 at ¶ 9].  Plaintiff filed its lawsuit as a result of VFC's foreclosure action against the Property purchased from Treyson and sought relief from the Lopez Defendants and Slusher.  The relief sought was based on theories of common-law fraud and fraud by nondisclosure against the Lopez Defendants, and breach of fiduciary duty, negligence, and violations of the Deceptive Trade Practices Act against Slusher.  [Case No. 15-7014, ECF No. 1-1 at 9-14].

On September 3, 2015, the Lopez Defendants removed the state action to federal court pursuant to 28 U.S.C. §§ 1452(a) and 1334, which initiated the instant Adversary Case, Number 15-7014.  [Case No. 14-70256, ECF No. 154].  Two weeks later, on September 17, 2015, Plaintiff filed the instant Motion to Remand.  [Case No. 15-7014, ECF No. 3].  Plaintiff pleads that this Court lacks subject matter jurisdiction over Plaintiff's removed causes of action, that the matter is non-core, and that it does not consent to entry of final orders or judgments by this Court.  *Id.* at 2.  Plaintiff further pleads that the Order issued by this Court violates § 524 and as such, could not have discharged any liability with respect to Hector Ruben Lopez.  *Id.* at 4-6.  Accordingly, Plaintiff suggests that the case is ripe for mandatory abstention under 28 U.S.C. § 1334(c)(2) and, in the alternative, that this Court should exercise discretionary abstention pursuant to 28 U.S.C. § 1334 (c)(1).  *Id.* at 6-18.  The following day, September 18, 2015, Plaintiff filed the instant Motion to Vacate.  [Case No. 14-70256, ECF No. 158].  Plaintiff pleads that it qualifies for relief from the Order, pursuant to Fed. R. Civ. P. 60(b), on the basis that the

judgment is void and Plaintiff requests this Court to partially vacate the portion of the Order that concerns Hector Ruben Lopez.  *Id.*

On September 30, 2015, the Lopez Defendants filed a Response to Plaintiff's Motion to Remand.  [Case No. 15-7014, ECF No. 4].  The Lopez Defendants argue that Plaintiff's § 524 argument is not a permissible basis for remand, that mandatory abstention is not appropriate because the proceeding is a core matter, and that this Court should decline to remand on a discretionary abstention basis or in equity.  *Id.*  On October 6, 2015, Plaintiff filed a Reply to the Lopez Defendant's Response to its Motion to Remand.  [ECF No. 5].  Plaintiff asserts that Fifth Circuit case law supports its § 524 argument, in stark contrast to the Sixth Circuit case law with which the Lopez Defendants grace this Court, that the absence of an objection to the Plan does not negate the applicability of § 524 to the Order, and that mandatory abstention is not precluded. *Id.*  On October 12, 2015, the Lopez Defendants filed their Sur-Reply to the Reply of Plaintiff as to the Motion to Remand.  [ECF No. 6].  The Lopez Defendants argue that the case law and statutory provisions offered by Plaintiff do not support the premises, as articulated by Plaintiff, that this Court should be deprived of subject matter jurisdiction due to the conflict of the Order with § 524(e).  *Id.* at 1-4.  Lopez Defendants offer a series of arguments and case law that support the proposition that the time to lodge an objection to a plan of reorganization pursuant to § 524(e) is prior to confirmation, not post-confirmation.  *Id.* at 2-5.

On October 8, 2015, Treyson filed a Response to Plaintiff's Motion to Vacate.  [Case No. 14-70256, ECF No. 162].  The response merely linked the reasoning for why this Court should reject the Motion to Vacate to that of the Motion to Remand and asserts that Plaintiff's Motion to Vacate is premature given the Motion to Remand.  *Compare* [Case No. 14-70256, ECF No. 162] *with* [Case No. 15-7014, ECF No. 4].  Plaintiff did not file any pleadings in reply to Treyson's

Response.

On January 12, 2016, this Court conducted an evidentiary hearing (the "***Hearing***") on the

Motion to Remand and Motion to Vacate.   At the hearing, both parties offered exhibits to be

admitted and argued extensively.

    1.    Exhibits at the Hearing:

        a.  Plaintiff offered and the Court admitted the following:

            i.  Exhibit 1:  Plaintiff's Original Petition, [ECF No. 175-1].
           ii.  Exhibit 3:  Wraparound Promissory Note (the "***Promissory Note***"),[6] [ECF No. 175-3].
          iii.  Exhibit 12:  Treyson's Plan of Reorganization, [ECF Nos. 66, 175-12].

        b.  Treyson offered and the Court admitted the following:

            i.  Exhibit 1:  Amended Schedule F, [ECF No. 39].
           ii.  Exhibit 2:  Certificate of Service, [ECF No. 41].
          iii.  Exhibit 3:  Treyson's Plan, [ECF No. 66].
          iv.  Exhibit 4:  Treyson's Disclosure Statement, [ECF No. 67].
           v.  Exhibit 5:  Order and Notice for Hearing on Disclosure Statement, [ECF No. 69].
          vi.  Exhibit 6:  Certificate of Service, [ECF No. 70].
         vii.  Exhibit 7:  Agreed Order Approving Treyson's Disclosure Statement and Fixing Time for Filing Objections, Acceptances or Rejection of Plan, and Order Setting Confirmation Hearing, [ECF No. 81].
        viii.  Exhibit 8:  Certificate of Service, [ECF No. 83].
          ix.  Exhibit 9:  BNC Certificate of Notice for Treyson Ex. 7, [ECF No. 84].
           x.  Exhibit 10:  Certificate of Service, [ECF No. 85].
          xi.  Exhibit 11:  Chapter 11 Ballots and Summary, [ECF No. 139].
         xii.  Exhibit 12:  Confirmation Order, [ECF No. 142].
        xiii.  Exhibit 13:  Docket Sheet for State Case C-3020-15-C.
        xiv.  Exhibit 14:  Notice of Removal, [Case No. 15-7014, ECF No. 1].
         xv.  Exhibit 15:  Proof of Claim No. 23, [Case No. 14-70256, Claim No. 23-1].

    2.  Wilfredo Ricardo Hinojosa ("***Mr. Hinojosa***"), Principal of Hinojosa Engineering, Inc., was called as a witness and his testimony included:

        a.  His knowledge of Treyson filing for bankruptcy, including that:

---

[6] The terms of the Promissory Note is "23 monthly installments of $1,321.51, on or before the 23rd day of every month, beginning January 23, 2009 and continuing monthly until December 23, 2010…" based on principal of $100,000 and a ten percent interest rate.  Treyson Ex. 3 at 1.

      i. He was unaware that Lopez was to receive a discharge and release upon Treyson's Plan being confirmed;

     ii. He received a copy of the Plan and the extent to which he reviewed the Plan; and

   iii. He provided a copy of the Plan to Plaintiff's attorneys, which included his brother, Gilberto Hinojosa;

  b. The transaction on the Property, including:

      i. He was unaware there was an underlying mortgage on the Property; and

     ii. Confirming the $200,000 payment to Treyson.

  c. On cross examination:

      i. His review of the Plan was not extensive because it was related to Treyson, not Hector Ruben Lopez.

     ii. His intent for sending the Plan and associated documents to Plaintiff's attorneys was that they could see they got them, but otherwise had no objective. He did not follow up or speak with the attorneys on the documents.

   iii. Claimed that he did not know the attorney who filed a proof of claim on behalf of Plaintiff and was not aware if Plaintiff's attorneys had arranged it. He further testified that he does not recall any conversations occurring.

At the Hearing, this Court ordered that the parties submit briefs on different issues raised. The Lopez Defendants and Slusher were to submit briefs on the potential impact of a third party claim by either party. Plaintiff was to submit a brief on the applicability of *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010), as well as *Hernandez v. Larry Miller Roofing, Inc.*, 628 F. Appx. 281 (5th Cir. 2016) to the instant case. All parties submitted timely briefs.

The Lopez Defendants' Brief focused on a potential third party claim and whether this Court would retain subject matter jurisdiction over the claim should Hector Lopez be determined to have been released and discharged by the Plan. [Case No. 15-7014, ECF No. 22] (hereafter "***Lopez Brief***"). The first purported basis for subject matter jurisdiction is a bankruptcy court's

ongoing jurisdiction for interpretation of the Plan as it relates to third party claims and, coincidentally, to the enforcement of the Plan's provisions. *Id.* at ¶¶ 3-4. This argument is premised on a Fifth Circuit case, *In re Lothian Oil, Inc.*, 531 F. Appx. 428, 436 (5th Cir. 2013), which recognized a bankruptcy court's continuing subject matter jurisdiction to interpret provisions of a confirmed plan. *Id.* at ¶ 4. The brief further discussed how the same basis for jurisdiction encompassed potential claims against Blanca Lopez because Plaintiff's complaint alleged, *inter alia*, joint commissions of fraud. *Id.* at ¶ 6-7. The application of the test from *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390-91 (5th Cir. 2001), as argued by the Lopez Defendants, favors the retention of subject matter jurisdiction. *Id.* at ¶¶ 9-13. In discussing the potential for cross claims by Blanca Lopez or Slusher against Hector Ruben Lopez, the Lopez Defendants argued that, while no such claims are pending, the facts of the case were sufficient that this Court could retain subject matter jurisdiction because of the potential effect on the bankruptcy estate. *Id.* at ¶ 15 (citing to *In re KSRP, Ltd.*, 809 F.3d 263, n.3 (5th Cir. 2015)). In its brief, Slusher, in essence, joined the Lopez Defendants in their brief's analysis of the ramifications of potential cross claims, should such claims be asserted by Blanca Lopez and Slusher. [Case No. 15-7014, ECF No. 26 at ¶ 2].

Plaintiff filed its brief that focused on, *inter alia*, this Court's subject matter jurisdiction, or lack thereof, over the Plaintiff's claims, possible third party claims between the defendants, and the effect of *Espinosa* on the instant case. [ECF No. 27] (hereafter "**Hinojosa Brief**"). Plaintiff first argued that this Court does not possess subject matter jurisdiction over its causes of action, because the causes of action pursued by Plaintiff are not "related to" the bankruptcy estate, since a ruling for Plaintiff would not "determine any rights, liabilities, or course of action by Treyson…" *Id.* at 3-4 (citing *In re Federal Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir.

2002); *Matter of Walker*, 51 F.3d 562, 569 (5th Cir. 1995); *Pacor v. Higgins*, 743 F.2d 984, 993 (3d Cir. 1994) (as the basis of the "related to" test)).  To wit, Plaintiff argues that the outcome of its claims do not require an interpretation of the Plan by distinguishing the cases the Lopez Defendants relied upon, as they concerned debtors and creditors, not creditors and non-debtors. *Id.* at 4-5.  Plaintiff then presents its arguments on how the potential third party claims against Hector Lopez by the remaining defendants would not qualify as "related to" Treyson's bankruptcy if another lawsuit must first be filed by a third party.  *Id.* at 5-7 (citing to *In re Federal Mogul Global, Inc.*, 300 F.3d at 382, and *In re Federal-Mogul Group Inc.*, 282 B.R. 301, 306 (D. Del. 2002)).  According to Plaintiff, a cross claim between co-defendants would "be the same as a new lawsuit and thus barred" under *In re Federal Mogul Global, Inc.*'s interpretation of "related to" subject matter jurisdiction.  *Id.* at 6-7.  Finally, Plaintiff presents several arguments based on *Espinosa*.  *Id.* at 7-12, 15-17.  First, Plaintiff distinguishes *Espinosa* from the instant case by first focusing on *Espinosa*'s notice requirement.  *Id.* at 8-9.  According to Plaintiff, *Espinosa* is only binding upon litigants and is not applicable to non-litigants, such as the Lopez Defendants.  *Id.*  Secondly, Plaintiff argues that *Espinosa* is inapplicable because, similar to its arguments on jurisdictional issues, *Espinosa* deals with a dispute between a debtor and a creditor, both unquestionably falling under the subject matter jurisdiction of the bankruptcy court, but not disputes between non-debtors and a creditor where parties' due process rights may not be satisfied.  *Id.* at 10-11.  To extend this argument, Plaintiff focuses on *Espinosa*'s discussion of the bankruptcy court's independent duty to evaluate a debtor's plan to ensure compliance with the code regardless of a creditor objection, or lack thereof, and states that this Court erred by confirming the Plan when there was an impermissible provision. *Id.* at 11-12, 15-17.  Even if this Court failed to do what Plaintiff argues that it should do, Plaintiff argues that

*Espinosa* does not require that Plaintiff must object to the Plan. *Id.* at 15-16. The remaining portions of Plaintiff's brief support these arguments. *Id.* at 14-15, 17-22. Thus, Plaintiff seeks to have this Court remand or abstain the instant case and vacate, to one degree or another, the Order. *Id.* at 22.[7]

### IV.   Motion To Remand and Motion to Vacate

The Motion to Remand filed by Plaintiff seeks to have this Court remand the case back to state court based on a theory that remand is appropriate pursuant to 28 U.S.C. §§ 1452(b), 1334(c)(2), and 1334(c)(1). [Case No. 15-7014, ECF No. 3 at 4]. The basis of Plaintiff's theory is that the provision of Debtor's Plan, [Case No. 14-70256, ECF No. 66], violates 11 U.S.C. § 524's prohibition of a "discharge of a debt of the debtor … not affect[ing] the liability of any other entity on, or the property of any other entity for, such debt." *See also In re Zale*, 62 F.3d 746, 760 (5th Cir. 1995). According to Plaintiff, this Court could not have discharged or released Plaintiff's Claims against Hector Ruben Lopez, Jr. through the Plan and, even if the Claims are barred, there is no release as to Blanca Lopez and Slusher. [Case No. 15-7014, ECF No. 3 at 5-6]. Furthermore, Plaintiff argues that this Court, under § 1334(c)(1-2), should abstain from hearing the Claims, which are related to a title 11 case, as there is no independent basis for federal subject matter jurisdiction[8] as to the state law Claims. [Case No. 15-7014, ECF No. 3 at 6-9]. Plaintiff presented a series of factors that this Court should consider for evaluating mandatory abstention, discretionary abstention, or equitable remand under §§ 1334(c)(1)-(c)(2) and 1452(b). [Case No. 15-7014, ECF No. 3 at 6-14].

---

[7] This Court is exercising its discretion, pursuant to 11 U.S.C. § 105, by entertaining Hinojosa's brief, despite its contravention of this Court's own procedures, in the pursuit of carrying out the provisions of the Code. However, this should not be construed to mean that this Court's own procedures are more of what one may call *guidelines* than actual rules. *C.f. Barrow v. C.I.R.*, 2008 WL 5000112, at *15 (T.C. Nov. 25, 2008); *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 630 (Tex. 2004) (O'Neill, J., concurring).

[8] Any references in this Memorandum Opinion to jurisdiction refer to subject matter jurisdiction, as the matter of personal jurisdiction has not been raised.

Additionally, the Motion to Vacate filed by Plaintiff seeks to have the Order by this Court vacated under Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60(b)(4)&(6).  [Case No. 14-70256, ECF No. 158].   Under Fed. R. Civ. P. 60(b)(4), a court may relieve a party or its legal representative from a final judgment, order, or proceeding when the judgment of the court is void.  Plaintiff substantially reiterates the § 524 violation argument from the Motion to Remand in its conclusion that the Order constitutes legal error.  [Case No. 14-70256, ECF No. 158 at 2-3].  Accordingly, Plaintiff, marshalling authority from the Seventh Circuit, avers that a judgment made outside of the rendering court's legal powers is void for the purposes of Rule 60(b)(4). [Case No. 14-70256, ECF No. 158 at 4] (citing to *United States v. Indoor Cultivation Equipment From High Tech Indoor Garden Supply*, 55 F.3d 1311, 1316 (7th Cir. 1995)).  Alternatively, Plaintiff argues that, should this Court conclude otherwise on the issue of the Order being void, Rule 60(b) provides a catch-all exception for this Court to grant relief for "any other reason that justifies relief," such as the lack of subject matter jurisdiction over Hector Lopez.  [Case No. 14-70256, ECF No. 158]; *see also* Fed. R. Civ. P. 60(b)(6).

## V.    The Legal Standard

Federal Rule 60(b) provides several bases by which a party may seek to have a court provide relief from a final judgment, order, or proceeding.  Fed. R. Civ. P. 60(b).[9]  However, the bases for which a court may justify granting relief is a non-exhaustive list.  Fed. R. Civ. P.

---

[9] On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

60(b)(6).  Under Rule 60(b), the Fifth Circuit has permitted courts a wide degree of discretion to grant a party the relief requested, and reversal is largely based on "denial of relief preclud[ing] examination of the full merits of the cause." *Ruiz v. Quarterman*, 504 F.3d 523, 531 (5th Cir. 2007) (discussing the standard of review for appeals on Rule 60(b) and the rarity of reversing a district court's exercise of discretion).  Rule 60(b)(4) provides courts with a mechanism to set aside void judgments when they arise.  12 J. Moore et al., Moore's Federal Practice § 60.44[1][a] (3d ed. 2007) (hereinafter "***Moore's***").  A "void judgment" is, in essence, a nullity.  Black's Law Dictionary 973 (10th ed. 2014); *see also Espinosa*, 559 U.S. at 270-71 ("Although the term "void" describes a result, rather than the conditions that render a judgment unenforceable, it suffices to say that a void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final.").  However, the term describes the result of the judgment rather than the judgment itself, and in order for a void judgment to be susceptible to collateral attack by a Rule 60(b)(4) motion, the judgment must suffer from "a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard."  *Espinosa*, 559 U.S. at 260 (citing to *United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661 (1st Cir. 1990)); *Thompson v. Deutsche Bank Nat'l Trust Co.*, 775 F.3d 298, 306 (5th Cir. 2014) (stating that "[i]f a court lacks jurisdiction over the parties because of insufficient service of process, the judgment is void and the district court must set it aside"); *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 142-3 (5th Cir. 1996) (stating that "[a] judgment is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law") (internal quotations omitted); *see also* Moore's § 60.44[1][a] n.5 (citing to *Boch* as well as cases from other Circuit Courts); Restatement (Second) of Judgments 12, 22 (1980).  Moore's further clarifies the

standard for a void judgment by adding that "[a] judgment is not void simply because it is wrongly decided, and a Rule 60(b)(4) motion is not a substitute for a timely appeal."  Moore's § 60.44[1][a] nn.6-6.1; *see also Espinosa*, 559 U.S. at 271 (also stating that "a motion under Rule 60(b)(4) is not a substitute for a timely appeal").

For a Motion to Remand, or alternatively to Abstain, there are four different bases under which it may be brought: 28 U.S.C §§ 1447(c), 1452(b) and 28 U.S.C. §§ 1334(c)(1), (c)(2). Section 1447 astricts courts to remand causes of action when the court determines that it lacks subject matter jurisdiction at any point prior to final judgment.  § 1447(c); *see also In re Allison*, 2006 WL 2620480, at *7 (Bankr. S.D. Tex. Sep. 12, 2006) ("At a minimum, a bankruptcy court has jurisdiction to determine its own jurisdiction.").  A Motion for Remand pursuant to § 1452 or Abstention under § 1334(c)(1) are similar in nature, as both are rooted in equity and courts have discretion to rule.  *J.T. Thorpe Co. v. Am. Motorists*, 2003 U.S. Dist. LEXIS 26016, at *21 (S.D. Tex. June 6, 2003).   Remand under §§ 1452 and 1334(c)(1) also use similar factors for considering whether to remand the removed action.  *Browning v. Navvaro*, 743 F.2d 1069, 1076 n.21 (5th Cir. 1984); *WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75 F.Supp.2d 596, 603 n.1 (S.D. Tex. 1999); *see also Ramirez v. Rodriguez*, 413 B.R. 621, 631-33 (Bankr. S.D. Tex. 2009).  A Motion to Abstain pursuant to § 1334(c)(2) is significantly different, and courts have no discretion if the party requesting relief meets the requirements for remand. *J.T. Thorpe*, 2003 U.S. Dist. LEXIS 26016, at *10; *see Ramirez*, 413 B.R. at 626-28; *see also Schuster v. Mims (In re Rupp & Bowman Co.)*, 109 F.3d 237, 239 (5th Cir. 1997).

## VI.   Conclusions of Law

### a.  Jurisdiction

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides that "the

district courts shall have original and exclusive jurisdiction of all cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter. 28 U.S.C. § 157(a); *see, e.g.,* In re: Order of Reference to Bankruptcy Judges, General Order 2012-6 (S.D. Tex. May 24, 2012) (granting a standing order of referring all bankruptcy cases to the bankruptcy court). This is a core matter for the purpose of § 157, which provides that bankruptcy judges may issue final orders or judgments where the matter is determined to be core under a non-exclusive list, including "matters concerning the administration of the estate." 28 U.S.C. § 157(b)(2). The matters at bar arise from the Plaintiff's Motion to Vacate the Order of this Court approving the Debtor's Plan, and consequently the Disclosure Statement, and the Plaintiff's Motion to Remand requires this Court to interpret the Order and related Plan, rendering this is a core matter under § 157(b)(2)(L). *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *see also Compton v. Mustang Eng'g Ltd. (In re MPF Holdings US LLC)*, 495 B.R. 303, 313 (S.D. Tex. 2013). Furthermore, this Court retained subject matter jurisdiction over this matter under the provisions of the Order Confirming Plan. [ECF No. 142 at 16, ¶ 27]; *see also Bailey*, 557 U.S. at 151.

### b. Venue

This Court may only hear a case in which venue is proper. Venue with respect to cases under title 11 is governed by 28 U.S.C. § 1408, which designates that venue may hold wherever "in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity…" Venue is proper pursuant to 28 U.S.C. § 1409, as the Lopez Defendants' principal places of residence are in Hidalgo County, Texas, Plaintiff's principal place of business is also in Hidalgo County, Texas, and Slusher, a professional limited liability company organized pursuant to Texas law, has its primary place of

business and registered agent in McAllen, Texas.

### c. Constitutional Authority

This Court also has an independent duty to evaluate whether it has the constitutional authority to sign a final order. *Stern v. Marshall*, 131 S. Ct. 2594 (2011). In *Stern v. Marshall*, the Supreme Court considered the constitutional limitations that Article III imposes upon § 157's grant of final order and judgment powers to non-Article III courts. *Id.* The Supreme Court held that § 157 violated Article III to the extent that it authorized final judgments on certain matters. *Id.* at 2616. The Court found that the particular bankruptcy ruling in dispute did not stem from bankruptcy itself, nor would it necessarily be resolved in the claims allowance process, and it only rested in a state law counterclaim by the estate. *Id.* at 2618. The Court reasoned that bankruptcy judges are not protected by the lifetime tenure attribute of Article III judges, but they were performing Article III judgments by judging on "all matters of fact and law" with finality. *Id.* at 2618-19. Hence, the Court held that Article III imposes some restrictions against a bankruptcy judge's power to rule with finality. The Court found that a solely state law based counterclaim, while statutorily within the bankruptcy judge's purview, escaped a bankruptcy court's constitutional power. *Id.* at 2620. This Court reads Stern to authorize final judgments only where the issue is rooted in a right created by federal bankruptcy or the resolution of which relies on the claims allowance process. In other words, this Court may issue final judgments and orders where the issue "arises in" or "arises under" bankruptcy, but not where the issue is merely "related to" bankruptcy. *See* § 157. However, even where the case does create a "*Stern* problem," Article III will be satisfied where the parties to the case knowingly and voluntarily consent to the bankruptcy court's power to issue final judgments. *Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938-39 (2015).

Having concluded that this is a core matter for statutory purposes, this Court also concludes that it has the constitutional authority to issue a final ruling granting or denying either of the instant motions pursuant to §§ 157(b)(2)(L) and 1334(b).

## VII.   Analysis

### a.  Motion to Vacate

Plaintiff filed the instant Motion on September 18, 2015, just over two weeks after the Defendants filed their Notice of Removal of the state action and, perhaps more importantly, approximately two months after this Court entered the Order confirming the Plan.  [Case No. 14-70256, ECF Nos. 142 and 158].  The Motion to Vacate requests that this Court grant relief to Plaintiff from certain portions of the Plan.  [ECF No. 158].  Plaintiff brought its Motion to Vacate the Order confirming the Plan pursuant to Fed. R. Civ. P. 60(b)(4), (b)(6) and Fed. R. Bankr. P. 9024.  *Id*.

### i.  Applicable Law

The Federal Rules of Bankruptcy Procedure substantially incorporate many of the Federal Rules of Civil Procedure, and Rule 9024 is no different in its incorporation of Fed. R. Civ. P. 60.  Rule 9024 provides that:

> Rule 60 F.R.Civ.P. applies in cases under the Code except that (1) a motion to reopen a case under the Code or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(c), (2) a complaint to revoke a discharge in a chapter 7 liquidation case may be filed only within the time allowed by § 727(e) of the Code, and (3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144, § 1230, or § 1330. In some circumstances, Rule 8008 governs post-judgment motion practice after an appeal has been docketed and is pending.

Fed. R. Bankr. P. 9024.  In turn, Rule 60 provides courts with a basis to make corrections when they are based on clerical mistakes, oversights, or omissions, as well as to grant relief to parties from a final judgment, order, or proceeding.  Fed. R. Civ. P. 60.  The pertinent portion of Rule

60 resides in the latter half of the language, regarding the basis for which a court can grant that

relief to a party.  Fed. R. Civ. P. 60(b).  Rule 60(b) states that:

> [o]n motion and just terms, the court may relieve a party or its legal representative
> from a final judgment, order, or proceeding for the following reasons:
>
> > (1) mistake, inadvertence, surprise, or excusable neglect;
> > (2) newly discovered evidence that, with reasonable diligence, could not have
> >     been discovered in time to move for a new trial under Rule 59(b);
> > (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation,
> >     or misconduct by an opposing party;
> > (4) the judgment is void;
> > (5) the judgment has been satisfied, released, or discharged; it is based on an
> >     earlier judgment that has been reversed or vacated; or applying it
> >     prospectively is no longer equitable; or
> > (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b)(1-6).  Section 1144 provides the applicable timeframe, as referenced by

Fed. R. Bankr. P. 9024, for which a party in interest may request that the court revoke an order of

confirmation procured by fraud, after notice and a hearing, that has been entered in the 180 days

prior to the request.  11 U.S.C. § 1144; Fed. R. Bankr. P. 9024 (providing certain exceptions to

the time limits provided in Fed. R. Civ. P. 60).  Thus, a motion to vacate an order confirming a

plan, pursuant to Fed. R. Civ. P. 60(b), is analyzed using the times from § 1144.

    The first step in analyzing whether a Rule 60 motion is eligible for relief is to review the

basis for which the parties have submitted the motion.  *Espinosa*, 559 U.S. at 271.  Accordingly,

this Court reviews the following aspects of Plaintiff's Motion to Vacate: (1) the timing

requirement under Rule 9024; (2) the standard for a void judgment pursuant to Rule 60(b)(4);

and (3) the standards for equitable relief for Rule 60(b)(6).

### ii.  Void Judgment and Equitable Relief Standards are Not Applicable

#### 1)  Timing Requirements

    A motion for relief under Rule 9024 is subject to the time limits provided in § 1144,

which requires that the party in interest that is seeking relief must file their motion before 180

days after the date of the order of confirmation.  Fed. R. Bankr. P. 9024.  Rule 9024 also provides that Rule 8008 applies, in certain circumstances, when an appeal has been docketed.  *Id.* However, that is inapplicable in the instant matter.  Notably, Rule 9024 only references the 180 day time requirement for filing for relief from an order contemplated by § 1144, but not the time requirements for provisions relating to the basis for which a revocation of an order of confirmation can be granted.  *Compare* Fed. R. Bankr. P. 9024 *with* 11 U.S.C. § 1144. Moreover, the Advisory Committee Notes make it plain that the time periods of Rule 60 are not controlling for relief sought under Rule 9024.  Fed. R. Bankr. P. 9024 advisory committee's note to 1983 rule.  Also, it is fundamental to understand that a Rule 60(b) motion is "not a substitute for a timely appeal." *Espinosa*, 559 U.S. at 270-71; *see also* Moore's § 60.44[1][a].

Here, this Court entered its Order on July 22, 2015, and Plaintiff filed its Motion to Vacate the Order on September 18, 2015.  [Case No. 14-70256, ECF Nos. 142 and 158].  The intervening time between the Order and Plaintiff's motion was 58 days, well outside of the time period permitted for Plaintiff to have appealed the Order, but within the time period to seek Rule 60(b) relief from the Order.  *See* Fed. R. Bankr. P. 8002(a)(1), (b)(1)(D); Fed. R. Bankr. P. 9024 (incorporating § 1144's 180-day time limit for a complaint to revoke an order confirming a plan). Accordingly, this Court holds that Plaintiff's Motion to Vacate is timely pursuant to Rule 9024, but that it nevertheless is untimely under Rule 8002(a)(1).

### 2)  Rule 60(b)(4)

Under Rule 60(b)(4), relief may be granted when the underlying judgment from which the party is seeking relief is found to be void.  Fed. R. Civ. P. 60(b)(4).  The Fifth Circuit has stated that Rule 60(b)(4) "embodies the principle that in federal court, a defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on

jurisdictional grounds." *Jackson v. FIE Corp.*, 302 F.3d 515, 522 (5th Cir. 2002) (internal quotation omitted). The Supreme Court in *Espinosa* reasoned that a judgment is void when "a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Espinosa*, 559 U.S. at 271 (citing to *United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661-62 (1st Cir. 1990) ("[T]otal want of jurisdiction must be distinguished from an error in the exercise of jurisdiction, and ... only rare instances of a clear usurpation of power will render a judgment void")).

First, this Court must examine the issue of subject matter jurisdiction, which is half of the battle in Plaintiff's complaint as to why the Order is void. [Case No. 14-70256, ECF No. 158 at 2-3]; *see also Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1052 (5th Cir. 1987). The Fifth Circuit has previously discussed what must be contemplated to determine if a party possesses a valid Rule 60(b)(4) motion when it stated that "a judgment is only void if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." *Brown*, 84 F.3d at 143 (internal quotations omitted); *see also Taylor v. Colvin*, 616 F. Appx. 685, 686-87 (5th Cir. 2015). The issue of subject matter jurisdiction is the primary issue raised by Plaintiff in the Motion to Vacate, as the § 524 argument essentially boils down to characterizing this Court's actions in its Order as one of jurisdiction. Plaintiff doubles down on this approach in the arguments presented in its brief. *See generally* [Case No. 15-7014, ECF No. 27].

Both Plaintiff and the Lopez Defendants belabor the Fifth Circuit's holdings in *In re Zale* for the purposes of the instant Motion to Vacate, as well as the Motion for Remand, to decry or substantiate the Order's approval of the Plan and accordingly of the Disclosure Statement's provisions. [Case No. 14-70256, ECF No. 158 at 3-4 and 162]; *see also Feld v. Zale Corp (In re*

*Zale Corp.)*, 62 F.3d 746 (5th Cir. 1995).  The circumstances of *In re Zale* are straightforward, Zale Corporation ("***Zale***"), like the Debtor, filed a voluntary petition for chapter 11 bankruptcy, and the ensuing proceedings involved discussions by a creditors' committee regarding potential claims against former directors of Zale.  *Id.* at 749.  The discussions lead to the various parties filing a motion before the bankruptcy court in order to accept a settlement that purported to resolve outstanding director liability and permitted the two companies that provided director liability insurance for Zale to settle any charges against their respective policies.  *Id.*  The settlement was modified to include an injunction that prohibited National Union Fire Insurance Company and Alan Feld (collectively "***Feld***") from pursuing claims against one of the insurance companies, CIGNA, on the basis of bad faith or breach of contract.  *Id.* at 750.  Feld challenged the proposed injunction and settlement, but the bankruptcy court approved the settlement over Feld's objections.  *Id.*  Feld appealed the decision to the district court, which in turn approved the bankruptcy court's approval of the settlement.  *Id.*  Feld appealed to the Fifth Circuit on the basis that the entry of the injunction by the bankruptcy court exceeded its § 105 powers.  *In re Zale*, 62 F.3d at 751; *see also* 11 U.S.C. § 105(a).[10]  The Fifth Circuit, similar to our analysis here, began by determining if the bankruptcy court had appropriate subject matter jurisdiction to hear the matter before the court.  *Id.* (citing to *American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods, Inc.)*, 885 F.2d 621, 624 (9th Cir. 1989)).[11]  The jurisdictional analysis by the Fifth Circuit was directed at determining if the Feld action was "related to" the bankruptcy case, which required that "some nexus must exist between the related civil proceeding and the

---

[10] § 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

[11] "Subject matter jurisdiction is the court's authority to entertain an action between the parties before it.  Power under section 105 is the scope and forms of relief the court may order in an action in which it has jurisdiction."

Title 11 case." *Id.* at 751-53; *see also Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 565, 569 (5th Cir. 1995); *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 787 (11th Cir. 1990); *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987).   In the Fifth Circuit's analysis, the court used the "related to" test that required a matter where the "outcome of that [matter] could conceivably have any effect on the estate being administered in bankruptcy" to be considered "related to." *In re Zale*, 62 F.3d at 752 (citing to *In re Wood*, 825 F.2d at 93, which in turn relied upon *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1985)).   The Fifth Circuit held that the bankruptcy court did have jurisdiction over CIGNA because of its participation in a settlement with the debtor, but distinguished the matter between Feld and CIGNA from CIGNA's relationship to the bankruptcy estate via the settlement.   *In re Zale*, 62 F.3d at 755.[12] The Fifth Circuit bifurcated the dispute between Feld and CIGNA, but held, upon examining the bankruptcy court's actions with respect to each portion, that the bankruptcy court had subject matter jurisdiction to temporarily enjoin Feld's tort claims, but lacked subject matter jurisdiction over Feld's torts claims permanently, and exceeded its § 105 powers in ordering a permanent injunction against contract claims. *Id.* at 755-766.

However, *In re Zale* dealt with the issue of a creditor timely asserting objections and appealing an order-an issue materially different from the instant case.   Since the time of *In re Zale*, the Supreme Court issued its decision in *United Student Air Funds, Inc. v. Espinosa*, which elucidates the inapplicability of *In re Zale* to the matter at bar.   *Espinosa*, 559 U.S. at 276 (holding that a party's failure, upon notice, to object to the confirmation of a plan before the time for appeal results in that party having been provided a full and fair opportunity to litigate, and such failure in availing itself of that opportunity does not justify relief under Rule 60(b)(4)).

---

[12] The Fifth Circuit cited *In re Kubly*, 818 F.2d 643, 645 (7th Cir. 1987), for the proposition that the court must deter a dispute's relation to the bankruptcy case and resolution of the dispute is not an expansion of jurisdiction by the bankruptcy court.

Furthermore, the requested application of *In re Zale* by both parties is contrary to the Supreme Court's reasoning in *Stern*, where the "majority itself acknowledged that a party can forfeit its right to challenge a bankruptcy court's constitutional authority by failing to make a timely objection." *In re Waco Town Square Partner, L.P.*, 525 B.R. 662, 669-670 (Bankr. S.D. Tex. 2015) (citing to *Stern*, 131 S. Ct. at 2608), *rev'd on other grounds and vacated*, 536 B.R. 756 (S.D. Tex. 2015).   It is uncontroverted that this Court properly possessed subject matter jurisdiction over both Treyson, as a debtor in bankruptcy, and Plaintiff, inasmuch as to the claims that Plaintiff might have that could possibly affect Treyson's bankruptcy estate. *In re Zale*, 62 F.3d at 751-53; *e.g. In re Walker*, 51 F.3d at 556, 569; *In re Wood*, 825 F.2d at 93.   In fact, Plaintiff specifically argues only that this Court did not possess subject matter jurisdiction over Hector Lopez, not Treyson, and therefore wholly fails to challenge this Court's subject matter jurisdiction in the matter, because it is Treyson's bankruptcy at issue, not Lopez's actions in the underlying case.  [Case No. 14-70256, ECF No. 158 at 3-4]; *see also Espinosa*, 559 U.S. at 271; *Box v. Dallas Mexican Consulate Gen.*, 2013 U.S. Dist. LEXIS 155465, at *1, *13-14 (N.D. Tex. Oct. 30, 2013) (citing to *In re Diet Drugs Prods. Liab. Litig.*, 434 F. Supp. 2d 323, 333 (E.D. Pa. 2006), for the proposition that the burden in a Rule 60(b)(4) motion is on movants, due to the "strong interest in the finality of judgments").  Looking to *Espinosa*, the issue is not whether this Court possessed subject matter jurisdiction over Hector Ruben Lopez, Jr., individually, but rather whether this Court possessed subject matter jurisdiction over Plaintiff's claim against Treyson, which Hector Ruben Lopez, Jr. happens to be a related party, arguably even a necessary party. *See, e.g.*, Fed. R. Civ. P. 19(a) (discussing the requirements of persons who should be joined to a proceeding, if possible).  *Contra* Hinojosa Brief, [Case No. 15-7014, ECF No. 27 at 10-11]. Plaintiff's argument to the contrary is unavailing, because Plaintiff is arguing on the basis of

error in confirming the Plan—the time to argue for error in confirming the Plan has long since passed, as is clearly discussed in *Espinosa*.  Hinojosa Brief, [ECF No. 27 at 11].  *But see Espinosa*, 559 U.S. at 275 (stating that the "Bankruptcy Court's failure to find undue hardship before confirming Espinosa's plan was a legal error.  But the order *remains enforceable* and *binding* on United because United *had notice of the error* and *failed to object or timely appeal*") (emphasis added).  Like United, Plaintiff had notice, *see infra*, and failed to object or timely appeal.  *Compare Espinosa*, 559 U.S. at 275 *with* Hinojosa Brief, [ECF No. 27 at 11].  Thus, the distinction Plaintiff seeks to make about *Espinosa* being a dispute between creditor and debtor, as compared with the instant case that is creditor and non-debtor, is unavailing, because the underlying basis to *Espinosa* is that a final order is binding upon parties who have received notice of the unlawful plan's application to them and their failure to timely object to or appeal confirmation.  *Espinosa*, 559 U.S. at 275; *Bailey*, 557 U.S. at 152 (discussing the *res judicata* effect of a final order and how it is binding on the "parties and those in privity with them).  *C.f. Shoaf*, 815 F.2d at 1053.  Moreover, Plaintiff's argument that *Espinosa* stands for the proposition that an unsecured creditor need not participate or involve themselves in a bankruptcy proceeding when the provision that affects them is in violation of the Code is also unavailing.  [ECF No. 27 at 15-17].  *Espinosa* plainly and unequivocally stands for the opposite proposition and it has long since been held that only a secured creditor's lien will pass through bankruptcy unscathed.  559 U.S. at 275.  *C.f. Long v. Bullard*, 117 U.S. 617 (1886).

Therefore, the issue in determining the effect of this Court's Order is not whether this Court had subject matter jurisdiction over Treyson and Plaintiff, as there is no arguable basis for which this Court did not possess subject matter jurisdiction, but rather whether Plaintiff received notice and was afforded an opportunity to litigate the contents of the Plan, the Order, or the

Disclosure Statement.  *In re Zale*, 62 F.3d at 751-53; *see also Espinosa*, 559 U.S. at 271-72, 276; *E.g. Stern*, 131 S. Ct. at 2608; *Boch Oldsmobile*, 909 F.2d at 661-62;[13] *Shoaf*, 815 F.2d at 1050. *Cf.* 11 U.S.C. § 1141(a)[14] & (c).[15]  Moreover, the Supreme Court in *Bailey* held that a bankruptcy court's final orders are not subject to collateral attack by parties that were given an opportunity to challenge the subject matter jurisdiction finding by the bankruptcy court.  *Bailey*, 557 U.S. at 153 (citing to *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982), which stated that "[a] party that has had an opportunity to litigate the question of subject-matter jurisdiction may not . . . reopen that question in a collateral attack upon an adverse judgment); *see also Stoll v. Gottlieb*, 305 U.S. 165, 171-72 (1938).

*Espinosa* is distinguishable from *In re Zale* on two fronts.  First, in *Espinosa*, the bankruptcy court had subject matter jurisdiction over the debtor's bankruptcy and United's claim against the debtor whereas the *In re Zale* bankruptcy court did not have subject matter jurisdiction to grant the settlement's permanent injunction, even though the bankruptcy court did have subject matter jurisdiction over the parties' claims and the ability to temporarily grant an injunction.  *Compare Espinosa*, 559 U.S. at 264-70, *with In re Zale*, 62 F.3d at 752-55.  Second, the creditor in *Espinosa* failed to object to the debtor's plan or appeal from its confirmation whereas the creditors in *In re Zale* objected to the settlement and appealed its subsequent approval.  *Compare Espinosa*, 559 U.S. at 264-65, *with In re Zale*, 62 F.3d at 750-51.  Thus, in a

---

[13] The First Circuit stated that "A judgment is void, and therefore subject to relief under Rule 60(b)(4), only if the court that rendered judgment lacked jurisdiction or in circumstances in which the court's action amounts to a plain usurpation of power constituting a violation of due process. *It is essential to state, that total want of jurisdiction must be distinguished from an error in the exercise of jurisdiction, and that only rare instance[s] of a clear usurpation of power will render a judgment void.*" (internal quotations and citations omitted) (emphasis added).

[14] "[T]he provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan."

[15] "Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor."

case where a creditor fails to exercise its rights by objecting to a pending matter or appealing the approval of a pending matter, the applicability of these two cases turns not on the jurisdictional issue, but on whether the complaining party sat on its rights, i.e. *Espinosa*, or exercised them, i.e. *In re Zale*. *Espinosa*, 559 U.S. at 278-79; *In re Zale*, 62 F.3d at 766.  *C.f. Hernandez*, 628 F. Appx. at 283, 288-89 (holding that the claim of a creditor, which had participated in the bankruptcy and voted for the plan of reorganization, against a company's officer was not discharged because the plan was insufficiently specific to do so).  Accordingly, the issue of the applicability of § 524(e) does not turn on whether or not this Court has subject matter jurisdiction over the parties' claims, which it most assuredly does, but rather turns on whether a creditor, if it has received proper notice, seeking relief for its claims has availed itself of the opportunities presented in the bankruptcy process.

Having determined that this Court possessed subject matter jurisdiction over Treyson and Plaintiff, this Court turns now to the issue of due process in order to determine if Plaintiff was properly noticed and had the opportunity, regardless of whether Plaintiff exercised that right, to be heard either via an objection to the confirmation of the Plan or to an appeal of the Order.  *See Callon Petroleum Co. v. Frontier Ins. Co.*, 351 F.3d 204, 210 (5th Cir. 2003).  The Fifth Circuit in *Taylor* further stated that in order for a judgment to be void, the judgment itself must be infected by a due process violation that rises to the level of a fundamental infirmity.  *Taylor*, 616 F. Appx. at 687.  The Supreme Court has addressed the issue of due process on many occasions, but the *Espinosa* decision is particularly instructive.  *See Espinosa*, 559 U.S. at 272.   In *Espinosa*, the debtor, Francisco Espinosa, failed to properly serve the creditor, United Student Aid Funds, Inc. (hereinafter "***United***"), with a summons and complaint, as required by the Bankruptcy Code, in order to commence the adversary proceeding required for the discharge of a

student loan, a point to which United attempted to attack the effect of the chapter 13 plan's purported discharge of Espinosa's student loans.  *Id.*  The Supreme Court rejected this argument, because United had been served with the filing and contents of the chapter 13 plan proposed by Espinosa, thus satisfying the requirement for due process that notice be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Id.* (citing to *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950), and *Jones v. Flowers*, 547 U.S. 220, 225 (2006)).  More importantly, actual notice is not the standard that is required for due process to be satisfied. *Jones*, 547 U.S. at 225.  The Supreme Court found that, similar to the instant facts, the actual notice of the filing of the plan and its contents disentitled United to relief pursuant to Rule 60(b)(4), because the receipt of actual notice "more than satisfied United's due process rights." *Espinosa*, 559 U.S. at 272.

Here, Plaintiff was put on notice as early as VFC's filing of its Motion for Relief from Stay, but most certainly received notice when Treyson filed its amended Schedule F listing Plaintiff as an unsecured creditor, specifically listing potential liability related to the very sale of real property upon which Plaintiff based its state court action.  [ECF Nos. 39 and 41].  Similar to United in *Espinosa*, Plaintiff also received notice of the Debtor's Plan of Reorganization and the Disclosure Statement.  [Case No. 14-70256, ECF Nos. 69 and 70].  Mr. Hinojosa confirmed in his testimony that he received the Plan and gave it only a cursory review before, allegedly, forwarding the Plan and associated documents to the attorneys working for his firm.  Thus, by failing to exercise his rights to review the Plan, Mr. Hinojosa and Plaintiff missed the opportunity to object to the Plan's provision that conspicuously and unequivocally discharged and released Treyson and Hector Ruben Lopez, Jr. from liability for the claim asserted by

Plaintiff. Furthermore, Plaintiff received notices, some of which were sent via Certified Mail Return Receipt Requested, at each subsequent hearing, order, and approval on the Plan and the Disclosure Statement, but prior to instigating its state action, filed neither an objection nor a timely[16] appeal on either. Not only was Plaintiff put on notice by the amended Schedule F and the subsequent hearings, but Plaintiff also filed a claim[17] in the Treyson bankruptcy. *See* [Case No. 14-70256, Claim No. 23-1]. Therefore, in accordance with the principles announced by the Supreme Court, Plaintiff cannot be found to have been denied the opportunity to litigate for want of due process, and has indeed engaged in the bankruptcy process as a creditor in this proceeding. *Espinosa*, 559 U.S. at 272, 276 (holding that "[w]here, as here, a party is notified of a plan's contents and fails to object to the confirmation of the plan before the time for appeal expires, that party has been afforded a full and fair opportunity to litigate, and the party's failure to avail itself of that opportunity will not justify Rule 60(b)(4) relief"); *Bailey*, 557 U.S. at 153; *Shoaf*, 815 F.2d at 1053; *In re Waco Square Partners*, 525 B.R. at 670. *But see In re Applewood Chair Co.*, 203 F.3d 914 (5th Cir. 2000) (reviewing the *res judicata* effect of a confirmed chapter 11 plan where the provision in question did not specifically release the person seeking to assert it). Moreover, the Fifth Circuit has held that a non-participating secured creditor cannot have its lien extinguished merely by receiving effective notice. *In re S. White Transp., Inc.*, 725 F.3d 494 (5th Cir. 2013) Thus, impliedly, an unsecured creditor that files a proof of claim and receives notice can certainly be found to have participated in the bankruptcy process and therefore have no viable claim on a pre-petition debt extinguished by the debtor's plan of reorganization. *Id.* at 498 (holding that participation in a bankruptcy as a creditor requires more than "mere passive

---

[16] Fed. R. Bankr. P. 8002 provides that "a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed."

[17] The Proof of Claim filed by Hinojosa, No. 23-1, was for $275,000.00, but provides no basis for the claim aside from attaching a Warranty Deed with Vendor's Lien and a Deed of Trust (Wraparound Financing) from the December 23, 2008 transaction between Hinojosa and Treyson.

receipt of effective notice" before a lien can be extinguished); *see also Elixir Indus., Inc. v. City Bank & Trust Co. (In re Ahern Enters., Inc.)*, 507 F.3d 817, 822 (5th Cir. 2007) (holding that a creditor's failure to exercise its rights resulted in its lien being extinguished by the confirmation of a chapter 11 plan).   Here, Plaintiff filed a Proof of Claim, received actual notice of the bankruptcy, did not exercise its right to object to the Plan, and elected to abstain from voting in favor or against the Plan, thus springing the provision of the Plan of which Plaintiff so vehemently objects.   [Case No. 14-70256, Claim 23-1]; [ECF No. 66 at 16] (provisioning a discharge and release of claims for Class 9 or 10 creditors that (1) vote to accept the Plan or abstain from voting and (2) have not opted out of the release).

In sum, the elements required to find that a judgment is void include where the court "lacked jurisdiction or if the court acted in a manner inconsistent with due process of law." *Espinosa*, 559 U.S. at 271; *Taylor*, 616 F. Appx. at 687.   *C.f. Bailey*, 557 U.S. at 152-53 (requiring that parties have the opportunity to contest subject matter jurisdiction and a failure to do so precludes collateral attack).   Here, Plaintiff does not complain that this Court lacks subject matter jurisdiction over Treyson's bankruptcy proceedings or even over the claim that Plaintiff pursues, but rather Plaintiff seeks to collaterally attack this Court's subject matter jurisdiction over Hector Ruben Lopez, Jr.   [Case No. 14-70256, ECF No. 158].   Plaintiff further bases its claim for relief upon a legal error in the Order.   *Id.*   However, the presence of legal error in the Order entered by this Court is a matter for appeal or reconsideration, after the order was entered, or for objection prior to entry, but it is not an appropriate basis for relief under Rule 60(b)(4). *Shoaf*, 815 F.2d at 1050; *see also Espinosa*, 559 U.S. at 271.   *Cf. Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015) (discussing the effect of plan confirmation and contrasting an order granting confirmation against an order denying confirmation as to its finality).   Plaintiff also has

consistently received notice of the filings and proceedings occurring in Treyson's bankruptcy case since its claim was added to the amended Schedule F and engaged in the bankruptcy process by filing its own claim. Therefore, Plaintiff cannot complain, nor does it, of a failure to receive notice or a lack of due process as required for relief under Rule 60(b)(4) and, even if Plaintiff had raised such a protest, Mr. Hinojosa's own testimony would confute that claim. This Court's reading of *Espinosa* stands in such stark contrast to Plaintiff's reading, which is simply so unsupported by the plain language of *Espinosa*, that to adopt it would be to accept an unnecessarily tortured construction of law that is contrary to its plain meaning. *See In re JCP Properties, Ltd.*, 540 B.R. 596, 607 (Bankr. S.D. Tex. 2015) (declining to adopt a tortuous reading of 11 U.S.C. § 1101(2)(C)); [Case No. 15-7014, ECF No. 27 at 7-12, 15-17]. *C.f. Yates v. United States*, 135 S. Ct. 1074, 1099 (2015) (Kagan, J., dissenting) (referring to the practice of inserting implied words into a statute as a game of Mad Libs); *In re Tavares*, 2016 WL 943832, *8 (Bankr. S.D. Tex. March 11, 2016) (also declining to play judicial Mad Libs); *Lamb's Chapel v. Center Moriches Union Free School Dist.*, 508 U.S. 384, 398 (1993) (Scalia, J., dissenting). As Plaintiff has failed to establish either of the alternative requisites under *Espinosa* for relief pursuant to Rule 60(b)(4), this Court holds that the Order is not void and therefore the Motion to Vacate, as to its basis in Rule 60(b)(4), should be **DENIED**. *See Espinosa*, 559 U.S. at 271; *Stern*, 131 S. Ct. at 2608; *Taylor*, 616 F. Appx. at 687; *Shoaf*, 815 F.2d at 1053; Moore's § 60.44[1][a].

### 3) Rule 60(b)(6)

Rule 60(b)(6) operates as an avenue in which "federal courts have broad authority to relieve a party from a final judgment upon such terms as are just, provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in

clauses (b)(1) through (b)(5)." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 862-63 (1988).  The Fifth Circuit has similarly construed a successful motion for relief pursuant to Rule 60(b)(6) as one where the claim for relief is based on extraordinary circumstances and not falling within any of the preceding categories. *Williams v. Thaler*, 524 F. Appx. 960, 963 (5th Cir. 2013); *Adams v. Thaler*, 679 F.3d 312, 319 (5th Cir. 2012); *Hess v. Cockrell¸* 281 F.3d 212, 215 (5th Cir. 2002); *Transit Cas. Co. v. Sec. Trust Co.*, 441 F.2d 788, 792 (5th Cir. 1971); *Cage v. Garcia (In re Garcia)*, 2010 Bankr. LEXIS 2580, at *1, *14-15 (S.D. Tex. Aug. 11, 2010). The claims for relief asserted by Plaintiff are not differentiated from those under 60(b)(4), but (b)(6) is merely asserted to operate as a catch-all provision in its Motion to Vacate.  [Case No. 14-70256, ECF No. 158].  The case law in this area is clear; as Plaintiff's claim for relief sounds in one of the preceding five subsections, relief is not available to Plaintiff under Rule 60(b)(6). *Liljeberg*, 486 U.S. at 862-3; *Williams*, 524 Fed. Appx. at 963; *Adams*, 679 F.3d at 319; *Cockrell*, 281 F.3d at 215; *In re Garcia*, 2010 Bankr. LEXIS 2580 at *14-15.  Accordingly, the Plaintiff's Motion to Vacate, as to its prayer for relief pursuant to Rule 60(b)(6), should be **DENIED**.

### 4)   Conclusion

Plaintiff's Motion to Vacate was predicated upon relief under Rule 60(b)(4)&(6).  [Case No. 14-70256, ECF No. 158].  Based on the foregoing, Plaintiff has failed to meet the burden required for relief from a void judgment and therefore, as there is another basis for relief, Rule 60(b)(6) is not available.  Accordingly, this Court orders that the Motion to Vacate is **DENIED**.

### b.  Effect of the Order Confirming Debtor's Plan of Reorganization

Having determined, based on the foregoing analysis, that Plaintiff's Motion to Vacate is denied, the question that must be taken up prior to examining the Motion for Remand is what the

effect of the Order is upon the instant suit between the parties.

### i. The Binding Effect of the Order Confirming the Plan

The facts and outcome of *Espinosa* are also particularly instructive in determining the effect of the Order in the instant matter between Plaintiff, Slusher, and the Lopez Defendants. *See generally Espinosa*, 559 U.S. at 268-76.   In *Espinosa*, as cited by the Lopez Defendants in their Sur-Reply, a debtor proposed a plan that included a provision to discharge accrued student loan interest, but failed to initiate the adversary proceeding as required by the Code. *Id.* at 263. Espinosa's plan was subsequently approved by the bankruptcy court, without objection from the creditor, and the creditor initiated action against the debtor several years after the debtor completed the terms of the plan. *Id.* at 264-66.   Similarly, Treyson proposed its Plan with a provision that was not permissible under the Code, but Treyson's Plan was confirmed without objection or a timely notice of appeal filed by Plaintiff.   In *Espinosa*, the creditor United had received notice of the filing of Espinosa's plan and filed a proof of claim in response. *Espinosa*, 559 U.S. at 265.   Similarly, a proof of claim was filed on Plaintiff's behalf after receiving notice on the amended Schedule F filed by Treyson. *Compare* [Case No. 14-70256, ECF No. 41] *with* [Claim 23-1]; *Cf.* [ECF Nos. 69, 70, 81, 83, 84, and 145].

However, there are several factual distinctions in the instant matter from the facts of *Espinosa*. 559 U.S. at 265-68.   First, Espinosa filed for chapter 13 bankruptcy rather than a chapter 11 as in the instant case. *Id.* at 260.   Second, Espinosa had fully completed the terms of the plan by making all planned payments on the debt owed. *Id.* at 265.   Third, the discharge in a chapter 13, as in *Espinosa*, does not occur until the debtor has completed making payments under the plan, whereas in a chapter 11, discharge for a non-natural debtor occurs upon plan confirmation. *Compare* 11 U.S.C. § 1328(a) *with* 11 U.S.C. § 1141.   Fourth, the bankruptcy

court had discharged a portion of Espinosa's student loan interest as called for by the plan, but the creditor did not take action until several years after the student loan interest was discharged by the bankruptcy court. *Espinosa*, 559 U.S. at 266.

Here, the Plan was approved by this Court on July 22, 2015, which was six days after Plaintiff sought relief in state court. The Plan called for payments to be made to the various classes over the course of five years, and for the most part, with certain classes receiving an immediate payment coupled with that five year stream of payments. [Case No. 14-70256, ECF No. 66 at 9]. Section 1141 grants, upon confirmation of a plan of reorganization, non-individual debtors an immediate discharge of all debts, and the provisions of the confirmed plan bind both the debtor and creditors, regardless of whether a proof of claim has been filed, will be filed, or is even allowed. § 1141(a)-(d); *see also In re JCP Properties, Ltd.*, 540 B.R. at 606-11, 614. *C.f. In re Simmons*, 765 F.2d 547 (5th Cir. 1985) (holding that a "secured creditor need not participate in a bankruptcy proceeding to preserve [its] lien"); *In re Taylor*, 132 F.3d 256, 260 (5th Cir. 1998) (holding that debtor's failure to use bankruptcy proceeding to determine the validity, or extend thereof, an IRS lien did not make a confirmed plan *res judicata* upon the IRS). Furthermore, § 1141 also acts to free "property dealt with by the plan … of all claims and interests of creditors …" § 1141(c). The effect of § 1141 is distinguishable in Treyson's case from that of *Espinosa*, in terms of *when* the discharge occurred in the process of the case, but it is squarely on all fours in the fact that both Treyson and Espinosa received their discharge. *Compare* § 1141(d)(1) *with Espinosa*, 559 U.S. at 260 *and* [Case No. 14-70256, ECF No. 142]. As Treyson has been granted its discharge in accordance with § 1141, the facts line up very similarly with those of *Espinosa*. 559 U.S. at 264-67. The Fifth Circuit in *Hernandez* stated that the inquiry into the preclusive effect of an order confirming a reorganization plan is the same, in

essence, as the interpretation of that confirmed plan.  *Hernandez*, 628 F. Appx. at 288-89 (citing

to *Iberiabank v. Geisen (In re FFS Data)*, 776 F.3d 1299, 1307 (11th Cir. 2015)).  *Cf. Sun*

*Finance Co. v. Howard (In re Howard)*, 972 F.2d 639, 641 (5th Cir. 1992) ("... Shoaf stands for

the proposition that a confirmed Chapter 13 plan is res judicata as to all parties who participate in

the confirmation process.").  Thus, this Court does not need to address the factors for *res*

*judicata*, but rather can interpret the provisions of the Plan according to its specificity.  *Id.*

In *Shoaf* and *Hernandez*, the Fifth Circuit analyzed the specificity of a plan's purported

release of liability for a third party.  *Hernandez*, 628 F. Appx. at 287-88 (citing to *Shoaf*, 203

F.3d at 919).  The Fifth Circuit required that the language in the plan must be specific as to the

parties involved and the claim(s) released in order to be sufficient.  *Id.*  The Fifth Circuit looked

at the factors used by the Eleventh Circuit in *In re FFS Data* as approximating the considerations

implicit in *Shoaf*'s specificity test:

> To determine whether a release of a third-party guarantor is sufficiently specific,
> the Fifth Circuit considers factors including whether the creditor would have
> known he was releasing the third-party guarantor, whether the release identifies
> the released parties, whether the release identifies the released claims, and
> whether the release of those claims was an integral part of the bankruptcy order.

*Id.* at 287, n.5 (citing to the second, third, and fourth factors in particular from *Iberiabank v.*

*Geisen (In re FFS Data )*, 776 F.3d 1299, 1308–09 (11th Cir. 2015)); *see also FOM P.R. S.E. v.*

*Dr. Barnes Eyecenter Inc.*, 255 F. Appx. 909, 912 (5th Cir. 2007) (per curiam) (holding that the

specificity of the plan's release language was sufficient to bar claims by the creditor).

Applying those considerations here, the Plan's provisions were specific as to the parties

involved—Creditors in Class 9 or Class 10 only.  [Case No. 14-70256, ECF No. 66 at 16-17].  In

the Plan, Plaintiff is classified as a Class 10 creditor.  *Id.* at 8-9.  As applied to Hector Lopez, the

pertinent portion of the Plan's provision provides that:

> "each Holder of a … Class 10 Unsecured Claim … shall be deemed to have …

> released and discharged [Treyson] and … Hector Ruben Lopez, Jr. … from any
> and all claims … based on or related to … [Treyson], [Hector] Lopez, [Treyson's]
> pre-petition … sale of any asset of [Treyson]."

*Id.* at 16-17.  Thus, the provision of the Plan refers specifically, *inter alia*, to the *pre-petition* transaction between Plaintiff and Treyson wherein Treyson *sold* the Property, an asset of Treyson's, to Plaintiff.  *Compare* [Case No. 14-70256, ECF No. 66 at 16-17] *with* [Case 15-7014, ECF No. 1-1 at 5-11] (presenting facts and allegations of Plaintiff's state court complaint as pertaining to Hector Ruben Lopez) *and* [Claim 23-1] (filing a proof of claim on a real property transaction between Plaintiff and Treyson, as authorized by Hector Ruben Lopez, Jr. as President of Treyson).  *Contra In re Applewood Chair Co.*, 203 F.3d 914, 919-20 (5th Cir. 2000) (discussing the lack of a provision specifically releasing non-debtors from liability and the general provision was insufficient).  On the matter of the claims being released, it would have been apparent to a creditor that their claim against a third party was being released by the language of the provision.  *Compare* [Case No. 14-70256, ECF No. 66 at 16-17] *with* [Case 15-7014, ECF No. 1-1 at 6-11].  Thus, the Plan's specificity satisfies three of the four considerations.

The remaining consideration is the degree to which the release was an integral part of the reorganization.  An integral part has been defined as being "[a] part essential to completeness" or "necessary to the completeness or integrity of the whole."  Oxford English Dictionary (2016); *Integral Part*, Ballentine's Law Dictionary (3d ed. 1969).  The value of Plaintiff's potential claim was a significant portion of the outstanding liabilities held by Treyson.  At the time the Plan was filed, Plaintiff had not yet filed its state court action against Treyson, but Treyson was aware of the potential claim as it filed an Amended Schedule F and Plaintiff had filed a proof of claim.  [ECF No. 39 at 2]; [Claim 23-1].  Due to the specificity of the release language, the relative size of the potential claim compared to the other claims against Treyson's bankruptcy

estate or the claims' effect on Hector Ruben Lopez given to his contributions under the Plan, alternatively being necessary to the reorganization itself, this Court concludes that the release was an integral part of the Plan. *Hernandez*, 628 F. Appx. at 287-88 (discussing the necessity of the plan provision from *FOM*, 255 F. Appx. at 912). Accordingly, the Plan has met all four of the factors to determine specificity, as discussed in *Hernandez* and *Shoaf*. *Id.* Furthermore, Plaintiff is an unsecured creditor that, pursuant to *In re Simmons*, is not entitled to abstain from participation in the bankruptcy proceedings and have its lien survive the bankruptcy. *In re Howard*, 972 F.2d at 641 (noting that "*Simmons* represents a limited exception to the general rule of Shoaf based upon the competing concerns expressed in the bankruptcy code.").

Accordingly, this Court holds that the effect of the Order is to discharge and release Treyson and Hector Ruben Lopez, Jr. from any and all liability stemming from Plaintiff's claims even if there are provisions that are non-compliant with the Code, because Plaintiff received notice of the sufficiently specific plan, filed a proof of claim, failed to object to the plan, and failed to appeal the Order. *Compare Hernandez*, 628 F. Appx. at 286-89 (reviewing and applying the specificity test to determine if a confirmed plan of reorganization is entitled to claim preclusion effect) *with Espinosa*, 559 U.S. at 260-63. *Cf.* § 1141(a) (discussing the binding effect of a confirmed plan); *Baker Hughes Oilfield Operations, Inc. v. Morton (In re R.L. Adkins Corp.)*, 784 F.3d 978, 980 (5th Cir. 2015) (holding that the creditor's failure to argue its reading of the confirmed plan as to deny it the right to a credit bid either in the confirmation hearing, an objection, or an appeal rendered its failure to timely exercise a credit bid a final and unappealable foreclosure on the creditor's opportunity to thereafter pursue the right). *C.f. Stoll v. Gottlieb*, 305 U.S. 165, 172 (1938) (holding that parties are not permitted to collaterally attack a final order by a court on the basis of subject matter jurisdiction because it is, in essence, a retrial

of the issues previously decided). *But see In re Applewood Chair Co.*, 203 F.3d. at 919 ("The lack of a specific discharge distinguishes this situation from that in *Shoaf*…").

### ii. Third Party Claims, *Espinosa*, and Subject Matter Jurisdiction

At the Hearing, Slusher's counsel raised the issue of potential cross claims being asserted against Hector Ruben Lopez, which raised a novel issue submitted in the parties' briefs. Applying *Espinosa*'s due process and notice analysis to the instant case is the most prudent method of analyzing whether third party claims are also barred. *Espinosa*, citing to *Mullane*, stated that "[d]ue process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Espinosa*, 559 U.S. at 272 (citing to *Mullane*, 339 U.S. at 314) (internal quotations omitted); *see also In re Krueger*, 812 F.3d 365, 370 (5th Cir. 2016) (citing to *Espinosa*, 559 U.S. at 271-72). Accordingly, the issue here is whether Slusher and Blanca Lopez had notice of Treyson's pending bankruptcy such that they would be "apprised… of the pendency of the action." Neither Slusher nor Blanca Lopez were noticed parties to the Plan or Treyson's Disclosure Statement, unlike Plaintiff and its counsel, Gilberto Hinojosa. *See* [ECF Nos. 69, 70, 83, and 84]; *see also* [ECF No. 85] (noticing the attorney that filed Plaintiff's Proof of Claim). Furthermore, the certificates of service filed by Treyson do not indicate that notice was published in a newspaper that could have provided requisite constructive notice to unknown creditors such that the co-defendants might have been put on notice. *In re Placid Oil Co.*, 753 F.3d 151, 154-55, 160-62 (5th Cir. 2014) (holding that notice published in a newspaper of national circulation, e.g. the Wall Street Journal, was sufficient to satisfy the Due Process Clause's requirement of providing constructive notice to an unknown creditor when such an unknown creditor is aware of a potential claim). Here, Slusher and Blanca Lopez are not unknown creditors of Treyson, but rather potential litigants against Hector Ruben Lopez with no

actual legal interest in a cause of action and, as such, constructive notice via publication, even if it were to have occurred, would be ineffective to satisfy their due process rights. *Id.* Moreover, even if they had received notice of the Plan and Disclosure Statement, the plain language of the relevant section of the Plan only applies to creditors in class 9 and class 10, of which Slusher and Blanca Lopez were absent. [ECF No. 66 at 16-17].

Plaintiff seeks, albeit in vain, to state how this Court lacks jurisdiction over potential third party claims. [Case No. 15-7014, ECF No. 27 at 5-6]. Plaintiff cites to Third Circuit precedent for the proposition that a bankruptcy court cannot have jurisdiction over third party actions "*if there would need to be another lawsuit before such action could have any impact on the bankruptcy proceedings.*" *Id.* (citing to *In re Federal Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002). However, Fed. R. Civ. P. 15(a)(2) permits a party to amend its pleading with "the court's leave," which should be freely given to accomplish justice. Thus, a cross claim *could* impact the instant litigation *without* another lawsuit needing to be filed. However, the issue is not ripe, as a party has yet to file a cross claim in the instant matter.

A ruling from this Court on the binding effect of the Order upon third party claims, while pertinent towards the resolution of the instant matter, would nonetheless constitute an advisory opinion-an answer to a question that is strictly proscribed by Article III, as there are not any "concrete cases and controversies" aside from the one asserted by Plaintiff. *United States v. Windsor*, 133 S. Ct. 2675, 2698 (2013) (Scalia, J., dissenting) (discussing how the Constitution, as enacted by the People, provides judges "a power to decide not abstract questions but real, concrete 'Cases' and 'Controversies'"). Therefore, this Court concludes that, of the parties involved in the instant case, the Plan is binding only upon Plaintiff, Treyson, and Hector Ruben Lopez, Jr., if Hector Ruben Lopez, defendant, is one and the same, because each received proper

notice in the bankruptcy and does not reach the issue of potential third party claims as it is advisory in nature.

### c. Motions to Remand

Plaintiff filed its Motion for Remand on September 17, 2015, which was timely pursuant to 28 U.S.C. § 1447(c),[18] as the Notice of Removal had been filed on September 3, 2015. [Case No. 15-7014, ECF No. 3]. Plaintiff's Motion for Remand argues for relief on three different bases: (1) remand is appropriate under 28 U.S.C. § 1452(b); (2) mandatory abstention is appropriate under 28 U.S.C. § 1334(c)(2); and (3) discretionary abstention is appropriate under 28 U.S.C. § 1334(c)(1). [ECF No. 3 at 1]. This memorandum opinion will discuss (1) the applicable law, (2) the Motion for Remand's relationship to the outcome from Plaintiff's Motion to Vacate, and (3) the applicability of mandatory abstention under 28 U.S.C. § 1334(c)(2).

### i. Applicable Law

Plaintiff argues that the instant cause of action should be remanded to the state court from whence it came on the basis of equitable remand under § 1452, that the factors weigh in favor of discretionary abstention under § 1334(c)(1), or that the mandatory abstention is justified pursuant to § 1334(c)(2).

Section 1452 provides parties with the ability to:

> remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a). However, § 1452 also provides the court to which the claim is removed the

---

[18] "A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be *made within 30 days after the filing of the notice of removal* under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case." 28 U.S.C. § 1447(c) (emphasis added).

ability, upon the court's discretion, to "remand such claim or cause of action on any equitable ground." § 1452(b). When evaluating the choice to remand under § 1452(b), a sister bankruptcy court discussed a list of potential factors to consider:

> (1) the convenience of the forum; (2) the presence of non-debtor parties; (3) whether the case should be tried as a whole in state court; (4) the duplicative and uneconomic effect of judicial resources in two forums; (5) the lessened possibility of inconsistent results; (6) whether the state court would be better able to handle issues of State law; (7) the expertise of the Bankruptcy Court; (8) the degree of relatedness or remoteness to the main bankruptcy case; (9) prejudice to involuntarily removed parties; (10) whether the case involves forum shopping; (11) the burden on the Bankruptcy Court's docket; and (12) considerations of comity.

*Texas Gulf Trawling Co. v. RCA Trawlers & Supply, Inc.* (*In re Ciclon Negro, Inc.*), 260 B.R. 832, 837 (Bankr. S.D. Tex. 2001) (citing to *Browning v. Navarro*, 743 F.2d 1069, 1076 n.21 (5th Cir. 1984), and *In re U.S. Brass Corp.*, 173 B.R. 1000, 1005 (Bankr. E.D. Tex. 1994)); *see also Ramirez v. Rodriguez* (*In re Ramirez*), 413 B.R. 621, 632-33 (Bankr. S.D. Tex. 2009). The court in *J.T. Thorpe Co.* discussed the overlap between the "kindred statutes" and compared them:

> Section 1452(b) favors comity and the resolution of state law questions by state courts, as does § 1334(c). Together, §§ 1452(b) and 1334(c) strongly evince a congressional policy that, absent countervailing circumstance, the trial of state law created issues and rights should be allowed in state court, at least where there is no basis for federal jurisdiction independent of § 1334 and the litigation can be timely completed in state court. Because the statutes are similar in purpose and spirit, circumstances which weigh in favor of discretionary abstention or dictate mandatory abstention under the respective subsections of § 1334(c), likewise weigh in favor of or constrain remand under § 1452(b).

*J.T. Thorpe Co. v. Am. Motorists*, 2003 U.S. Dist. LEXIS 26016, at *1, *21 (S.D. Tex. June 6, 2003) (citing *Lee v. Miller*, 263 B.R. 757, 763 (S.D. Miss. 2001)); *see also Ramirez*, 413 B.R. at 632. Another sister bankruptcy court has used the set of factors for permissive abstention pursuant to § 1334(c)(1), but used additional factors in the evaluation of equitable remand. *Ramirez v. Rodriguez* (*In re Ramirez*), 413 B.R. 621, 632-33 (Bankr. S.D. Tex. 2009). The factors used in *Ramirez* are:

(1) forum non conveniens;
(2) whether the civil action has been bifurcated during removal, which favors a
    trial of the entire action in state court;
(3) whether the state court has greater ability to respond to questions of state law;
(4) the particular court's expertise;
(5) the inefficiencies of proceedings in two forums;
(6) prejudice to the involuntarily removed party;
(7) comity; and
(8) possibility of an inconsistent result.

*Id.* This Court adopts these two sets of factors when analyzing a motion to abstain under §

1334(c)(1) and also for equitable remand under § 1452(b).

Section 1334 provides the district courts with "original but not exclusive jurisdiction of

all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28

U.S.C. § 1334(b).  However, under most circumstances, there is "nothing in this section [that]

prevents a district court in the interest of justice, or in the interest of comity with State courts or

respect for State law, from abstaining from hearing a particular proceeding arising under title 11

or arising in or related to a case under title 11."  § 1334(c)(1).  As with § 1452(b), a list of non-

exclusive factors have been developed for determining the appropriateness of discretionary

abstention under § 1334(c)(1), including:

(1) the effect or lack thereof on the efficient administration of the estate;
(2) extent to which state law issues predominate over bankruptcy issues;
(3) difficult or unsettled nature of applicable law;
(4) presence of related proceeding commenced in state court or other
    nonbankruptcy proceeding;
(5) jurisdictional basis, if any, other than § 1334;
(6) degree of relatedness or remoteness of proceeding to main bankruptcy case;
(7) the substance rather than the form of an asserted core proceeding;
(8) the feasibility of severing state law claims from core bankruptcy matters to
    allow judgments to be entered in state court with enforcement left to the
    bankruptcy court;
(9) the burden of the bankruptcy docket;
(10) the likelihood that commencement of the proceeding in bankruptcy court
    involves forum shopping by one of the parties;
(11) the existence of a right to a jury trial;
(12) the presence in the proceeding of non debtor parties;
(13) comity; and

(14) the possibility of prejudice to other parties in the action.

*Ramirez*, 413 B.R. at 631-32 (citing to *J.T. Thorpe Co.*, 2003 U.S. Dist. LEXIS 26016, at *22-23).  The preceding factors can be similarly used to analyze equitable remand under § 1452(b) as well as discretionary abstention under § 1334(c)(1).  *Ramirez*, 413 B.R. at 632; *see also J.T. Thorpe Co.*, 2003 U.S. Dist. LEXIS 26016, at *22-23 (discussing how the § 1334(c)(1) factors can be used to analyze equitable remand under § 1452(b)).  Courts are given wide latitude when considering whether to abstain under § 1334(c)(1) and enjoy "broad discretion to refrain from hearing both core and non-core proceedings involving state law claims." *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1206 (5th Cir. 1996); *Ramirez*, 413 B.R. at 631; *Greg's Ballroom v. Showalter (In re Villarreal)*, 2008 Bankr. LEXIS 694, at *18 (Bankr. S.D. Tex. Mar. 14, 2008); *see also Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987) (discussing how § 1334(c)(1) "demonstrates the intent of Congress that concerns of comity and judicial convenience should be met, not by rigid limitations on the jurisdiction of federal courts, but by the discretionary exercise of abstention when appropriate in a particular case").

Having discussed the relevant statutory and case law provisions related to § 1452(b) and § 1334(c)(1), this Court will now look to mandatory abstention pursuant to § 1334(c)(2).  The key distinction between mandatory abstention and equitable or discretionary remand is that mandatory abstention applies "only to non-core proceedings--that is, proceedings 'related to a case under title 11,' but not 'arising under title 11, or arising in a case under title 11.'" *In re Gober*, 100 F.3d at 1206 (comparing 28 U.S.C. §§ 157(b)(1) & 1334(c)(2)); *see also J.T. Thorpe Co.*, 2003 U.S. Dist. LEXIS 26016, at *10; *Ramirez*, 413 B.R. at 626-27.  *Cf. Stern*, 131 S. Ct. at 2618.  Section 1334(c)(2) provides for mandatory abstention when:

> [u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not

have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).  A court must abstain from hearing the state law claim at issue when all

of the following factors are met:

(1) a motion has been timely filed requesting abstention;
(2) the cause of action is essentially one that is premised on state law;
(3) the claim is a non-core proceeding, i.e., it is "related to" a case under title 11 but does not arise under or in a case under title 11;
(4) the proceeding could not otherwise have been commenced in federal court absent federal jurisdiction under § 1334(b);
(5) an action has been commenced in state court; and
(6) the action could be adjudicated timely in state court.

*J.T. Thorpe Co.*, 2003 U.S. Dist. LEXIS 26016, at *10 (citing to *Schuster v. Mims (In re Rupp & Bowman Co.)*, 109 F.3d 237, 239 (5th Cir. 1997);  *In re Gober*, 100 F.3d at 1206; *Broyles v. U.S. Gypsum Co.*, 266 B.R. 778, 782-83 (E.D. Tex. 2001); *Lee v. Miller*, 263 B.R. 757, 763 (S.D. Miss. 2001); *Chickaway v. Bank One Dayton, N. A.*, 261 B.R. 646, 649 (S.D. Miss. 2001); *WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75 F. Supp. 2d 596, 605 (S.D. Tex. 1999)).   The determination of the status of a cause of action is rooted in the list of core proceedings in 28 U.S.C. § 157(b)(2).  Although § 157(b)(2) is non-exhaustive, that does not mean that every cause of action that can be categorized as a "core proceeding" under § 157(b)(2) should be included, given decisions such as *Marathon* and *Stern.  Ramirez*, 413 B.R. at 627; *see also Stern*, 131 S. Ct. at 2618; *Northern Pipeline Const. Co. v. Marathon Pipe Line Co*., 458 U.S. 50 (1982).  *But see Wellness Int'l Network*, 135 S. Ct. at 1938-39 (parties can consent to a bankruptcy court's final ruling on non-core claims).

### ii.  Relation to Motion to Vacate

Given the key considerations of core versus non-core when it comes to mandatory abstention, this Court must look at the effect of this Court denying the Motion to Vacate upon the

removed cause of action to determine if, notwithstanding Hector Ruben Lopez, Jr. being given his discharge and release per the Order confirming the Plan, this Court still has subject matter jurisdiction over Plaintiff's claims asserted against the remaining defendants in the matter, such that it may be a matter that may be retained  in this Court.  A bankruptcy court possesses subject matter jurisdiction to hear four different types of proceedings: "(1) cases 'under' title 11, that is, the bankruptcy petition; (2) proceedings 'arising under title 11;' (3) proceedings 'arising in' a bankruptcy case; and (4) proceedings 'related to' a bankruptcy case." *Ramirez*, 413 B.R. at 626 (citing to *In re Exide Techs.*, 544 F.3d 196, 205 (3d Cir. 2008) (citing 28 U.S.C. § 1334(b); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225 (3d Cir. 2005)); *Wood v. Wood (In re Wood)*, 825 F.2d 90, 92 (5th Cir. 1987)).  The Fifth Circuit in *In re Wood* stated that "it is not necessary to distinguish between proceedings 'arising under,' 'arising in a case under,' or 'related to a case under,' title 11," as the real necessary determination is "whether a matter is at least 'related to' the bankruptcy" when determining if a matter falls within bankruptcy subject matter jurisdiction. 825 F.2d at 93.  Proceedings that are "arising under" are those in which the matter "involve[s] a cause of action created or determined by a statutory provision of title 11." *Id.* at 96.  Those are distinguishable from proceedings that are "arising in," which involve matters "that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy," such as "[p]roceedings invoking the bankruptcy court's statutory authority to enter orders necessary for the consummation of a confirmed plan…" *United States Brass Corp. v. Travelers Ins. Group, Inc. (In re United States Brass Corp.)*, 301 F.3d 296, 306 (5th Cir. 2002).

    The Fifth Circuit in *In re Wood* went on to adopt a "related to" test articulated by the Third Circuit, which enjoys broad support, that looks at "whether the outcome of that proceeding

could conceivably have any effect on the estate being administered in bankruptcy." 825 F.2d at at 93, n.15 (citing to *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). In applying the test, the Fifth Circuit looked to see whether the proceeding was "sufficiently related to the pending bankruptcy to allow the district court to exercise jurisdiction under section 1334," which is to say that "plaintiff's claims must affect the estate, not just the debtor." *Id.* at 93-94. The Fifth Circuit went on to analyze the joinder provisions of the Code, because the cause of action involved both debtor and a non-debtor. *In re Wood*, 825 F.2d at 94. The court determined that joinder was permitted, because the cause of action against the non-debtor, in which he had been joined with the debtors, was "related to" the debtors' bankruptcy case because liability imposed against the debtors would affect that bankruptcy estate and, if liability was also found against the non-debtor, the burden would be proportionately spread. *Id.*

The Fifth Circuit has held that "[a]fter a plan is confirmed, the bankruptcy court's jurisdiction is limited to matters pertaining to the implementation or execution of the plan" or in other words, "matters that impact compliance with or completion of the reorganization plan." *Highland Capital Mgmt., LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 589 (5th Cir. 2008) (citing *Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390 (5th Cir. 2001), and *United States Brass Corp. v. Travelers Ins. Group, Inc. (In re United States Brass Corp.)*, 301 F.3d 296, 305 (5th Cir. 2002)). Furthermore, the Supreme Court has held that "if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991); *see also Newby v. Enron Corp. (In re Enron Corp. Sec.)*, 534 F.3d 325, 335 (5th Cir. 2008) (stating that "if 'related to' jurisdiction existed at the time of … removal" subsequent events "[can]not divest the district court of that subject

matter jurisdiction." *In re Celotex Corp.*, 124 F.3d 619, 626 (4th Cir. 1997)).

Here, this Court held that the Plan, as confirmed, acts to discharge and release Hector Ruben Lopez, Jr. from Plaintiff's pursued claims in the removed action. Therefore, as Plaintiff is precluded from asserting its claims against Hector Ruben Lopez, Jr., only Slusher and Blanca Lopez are to remain as defendants if Hector Ruben Lopez, defendant, is one and the same as Hector Ruben Lopez, Jr. This Court has concluded that the Plan, as confirmed, does not preclude any causes of action for a party that did not receive notice as to Treyson's Plan. Plaintiff, in its briefing, misconstrues the effect of *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388 (5th Cir. 2001), as applying only to the "plan's implementation and execution as it concerns [Treyson]." [Case 15-7014, ECF No. 27 at 20] (emphasis omitted). The issue in *Craig's Stores* involved post-confirmation contract disputes between a creditor to the debtor's chapter 11 bankruptcy and the debtor. 266 F.3d at 391 ("Viewed from the narrower perspective, it is clear that Craig's claim against the Bank principally dealt with post-confirmation relations between the parties… And even if such circumstances might bear on post-confirmation bankruptcy court jurisdiction, no facts or law deriving from the reorganization or the plan was necessary to the claim asserted by Craig's against the Bank."). To the contrary, Plaintiff seeks to assert pre-petition claims against Slusher and the Lopez Defendants based on pre-petition facts. While the instant facts are distinguishable from *In re Craig's Stores*, this Court is still confronting a proceeding where the "outcome … could conceivably have an effect on the debtor's estate." *Id.* at 390 (citing to *In re Wood*, 825 F.2d at 93). Plaintiff contends that a judgment against Hector Ruben Lopez would not implicate Treyson's bankruptcy, but the Plan plainly and unequivocally provides a contribution from Hector Ruben Lopez towards the reorganization of Treyson. [Case No. 14-70256, ECF No. 66 at 13] (providing a "Contribution from Shareholder Hector Ruben

Lopez" of "$500.00").  This Court is disconcerted at how Plaintiff can assert that a judgment against Hector Ruben Lopez would have no effect on Treyson's Plan given the Plan's provision of contribution from Hector Ruben Lopez.  *Compare* [Case No. 15-7014, ECF No. 27 at 4] *with* [Case No. 14-70256, ECF No. 67 at 12].  However, as this Court has concluded that the Order is *binding* upon the Plaintiff, this Court does not need to reach the identity of interest issue that arises due to Hector Ruben Lopez's contribution to Treyson's Plan because, at the present, there is no potential of a judgment against him being a de facto judgment against Treyson.  *See In re Divine Ripe, L.L.C.*, 538 B.R. 300, 308-10 (Bankr. S.D. Tex. 2015) (discussing the standard for extending the automatic stay to a non-debtor when there is an identity of interest between the non-debtor and the debtor).  According to the foregoing, this Court has exercised its continuing jurisdiction, as iterated in *In re Craig's Stores*, *inter alia*, over the confirmed Plan, but it must now turn to abstention and equitable remand to determine whether this Court should retain the matter, after having concluded that Hector Ruben Lopez, Jr. is discharged and released from liability by virtue of the *binding* effect of the Plan, or remand the case to state court.  266 F.3d at 390 (discussing ongoing jurisdiction over the "implementation or execution of the [confirmed] plan").

### iii.  Mandatory Abstention is Required as to the Remaining Defendants

As discussed above, there are six factors that must be met in order for mandatory abstention under § 1334(c)(2) to apply, and this Court will now analyze each of these factors. The first factor is whether "a motion has been timely filed requesting abstention." *J.T. Thorpe Co.*, 2003 U.S. Dist. LEXIS 26016, at *10.  Here, Plaintiff filed its Motion to Remand on September 17, 2015, which was two weeks after the Lopez Defendants removed the case from state court to this Court.  [ECF No. 1 and 3].  Therefore, Plaintiff has filed a timely motion, and

the first factor has been met.  The second factor is whether "the cause of action is essentially one that is premised on state law."  *J.T. Thorpe Co.*, 2003 U.S. Dist. LEXIS 26016, at *10.  In Plaintiff's original state court complaint, Plaintiff asserted claims of *respondeat superior* liability, common-law fraud, fraud by non-disclosure, breach of fiduciary duty, negligence, and a violation of the Texas Deceptive Trade Practices Action, each of which is rooted in state law, and the involvement of federal law only springs from the interpretation of the provisions of the Plan as to Hector Ruben Lopez, Jr..  [ECF No. 1-1 at 9-14].  Thus, Plaintiff has met the requirements of the second, third,[19] and fifth factors.[20]  The fourth factor looks to whether the parties could have otherwise brought the matter in federal court, rather than state court, absent jurisdiction pursuant to § 1334(b).  *Id.*  Here, there is no federal subject matter jurisdiction once the Plan has been interpreted, which is consistent with Plaintiff's arguments for remand, as diversity of citizenship is lacking and the causes of action are not rooted in federal law. Accordingly, Plaintiff has met the requirements of the fourth factor.  The sixth and final factor looks to whether "the action could be adjudicated timely in state court."  *J.T. Thorpe Co.*, 2003 U.S. Dist. LEXIS 26016, at *10.  The standard for timely adjudication in state court does not place a burden upon the movant to show a "*more timely* adjudicat[ion] in state court, but only that the matter can be timely adjudicated…"  *J.T. Thorpe Co.*, 2003 U.S. Dist. LEXIS 26016, at *12-13.  However, the movant must demonstrate more than a mere "naked assertion that the matter can be timely adjudicated in the state court."  *Id.* at *13-14 (citing to *Allied Mech. & Plumbing Corp. v. Dynamic Hostels Hous. Dev. Fund Co.*, 62 B.R. 873, 878 (Bankr. S.D.N.Y. 1986)); *In re Doctors Hosp. 1997, L.P.*, 351 B.R. 813, 846 (Bankr. S.D. Tex. 2006).  However, the standard for mandatory abstention is that the movant need only show that the state court can

---

[19] "(3) the claim is a non-core proceeding, i.e. it is "related to" a case under title 11 but does not arise under or in a case under title 11…"  *J.T. Thorpe Co.*, 2003 U.S. Dist. LEXIS 26016, at *10.
[20] "(5) an action has been commenced in state court…" *Id.*

*timely* adjudicate the matter, not that it would be *more* timely adjudicated.  *J.T. Thorpe Co.*, 2003 U.S. Dist. LEXIS 26016, at *12-13 (citing to *WRT Creditors Liquidation Trust*, 75 F. Supp. 2d at 605, for the proposition that "[t]he party moving for mandatory abstention need not show that the action can be more timely adjudicated in state court, but only that the matter can be timely adjudicated in state court"). Plaintiff presents some arguments in favor of a timely adjudication in the state court in its Motion to Remand, but given the short length of time the matter was before the state court prior to removal and the lack of time to commence proceedings—Plaintiff is hard pressed in rendering its position.  *Compare* [ECF No. 1 at 10] *with* [ECF No. 4 at 6-7]. One Court has noted that "[i]n instances where federal courts have found that state courts could adjudicate the dispute in a timely manner, the movant introduced evidence that the suit had already been prosecuted to some extent in the state court, which had issued various orders and become familiar with the case."  *In re Doctors Hosp.*, 351 B.R. at 846 n.29.  At first, such a reading of timely adjudication gives pause to believe that it may not be satisfied here, because there is no evidence here to show that the state court has issued orders or seen prosecution in the several short months in which the case had been initiated. However, this is not fatal, for the apt consideration must first consider whether the *bankruptcy* court has substantive familiarity with the underlying *state* aspects of the case. So far, the instant matter has only involved issues of plan interpretation and the surrounding law, howling a far cry from anything concerning why the lawsuit was initiated in state court. In fact, having dispatched its plan interpretation, this Court is faced to abstain from matters purely involving state law and incepted from state court. Furthermore, as the non-movant has rendered no evidence to indicate that the state court could *not* adjudicate the matter in a timely fashion, this Court presumes that the state court will timely adjudicate the matter, given the immense policy interest in comity.  *Id.* at *13-14; *Abadie v.*

*Poppin*, 154 B.R. 86, 90 (N.D. Cal. 1993) ("While an affirmative showing of the possibility of timely adjudication in state court may be necessary where a movant seeks abstention from a proceeding originating in federal court, such a showing is not necessary where the movant is contesting the removal of his own state action").   In sum, this Court believes that this matter ought to be remanded back to the sepulcher of state court. Therefore, this Court holds that Plaintiff has presented sufficient evidence, or rather sufficient justification for a lack of supporting evidence, to meet the burden of demonstrating that the state court could indeed adjudicate the matter in a timely fashion and thus demonstrate the sixth factor for mandatory abstention.

As Plaintiff has met all six factors for mandatory abstention to apply, this Court is constrained by both § 1334(c)(2) and case law to remand the cause of back to the state court from whence it came.   This Court agrees with the District Court's reasoning in *J.T. Thorpe Co.* that mandatory abstention favors a finding for equitable remand, but does not reach the merits of that finding under § 1452(b), as it is unnecessary to do so by virtue of having already determined that mandatory abstention is appropriate.   2003 U.S. Dist. LEXIS 26016, at *20-22.

## VIII.   Conclusion

Based on the foregoing analysis, this Court holds that Plaintiff's Motion to Vacate is **DENIED**, as the motion improperly fails to recognize that the Order is a final order that Plaintiff failed to object pre-confirmation or timely appeal post-confirmation and accordingly, under *Espinosa*, *Shoaf*, and *Hernandez*, which now has a binding effect upon noticed parties.   That *binding* effect bars Plaintiff's cause of action as to Treyson and Hector Ruben Lopez, Jr.   As to Plaintiff's Motion for Remand, this Court finds that the relief is warranted after Plaintiff met each of the six factors necessary for mandatory abstention, pursuant to § 1334(c)(2) and, as such,

the Motion for Remand is **GRANTED**.


An Order for both the Motion to Vacate and Motion for Remand consistent with this Memorandum Opinion shall be simultaneously entered herewith.



SIGNED 04/19/2016.

Eduardo V. Rodriguez
United States Bankruptcy Judge